George R. Fisher for use of Lucille Kiniry, Appellant, v. Associated Underwriters, Inc., Appellee.

Gen. No. 39,330.

Opinion filed March 16, 1938.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellant; HERBERT C. DEYOUNG, CHARLES F. WHITE and ROBERT E. ENGLISH, all of Chicago, of counsel.

ANSON H. BROWN, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in a garnishment proceeding in the superior court, wherein the court at the conclusion of all the evidence instructed the jury to render a verdict for defendant, upon which verdict a judgment was entered with costs against the plaintiff. A motion for a new trial was overruled.

The garnishment proceedings were based on a judgment secured by Lucille Kiniry against George R. Fisher in the amount of $10,000.

Plaintiff's theory of the case is that she sustained serious injuries in an automobile accident which occurred on August 6, 1933, near Schneider, Indiana, and that Fisher was liable for the damages as shown by the judgment in the original suit. He allegedly carried a policy of liability insurance on his automobile with the garnishees Chicago Lloyds and that the proceeds of such policy should be applied toward the payment of such judgment.

The theory of the garnishee is that there had been a cancellation of the policy in question prior to the date of the accident out of which the suits arose.

The evidence is undisputed that the policy of automobile liability insurance was issued to the defendant George R. Fisher in Chicago, Illinois; that the period covered by said insurance by its terms began March 13, 1933 and extended to March 13, 1934; that the policy was delivered to him by one Bernard L. Unger, agent of defendant. It is also undisputed as to the place where the accident occurred and that plaintiff and her husband were injured; that suit thereon was commenced and judgment entered in favor of plaintiff for $10,000 and judgment entered in favor of plaintiff's husband in the sum of $15,000.

Bernard L. Unger testified that he was employed by the Chicago Lloyds selling insurance during the summer of 1932 and left their employ in the fall of 1933; that Chicago Lloyds is a trade name that the defendants Associated Underwriters use; that he sold the insurance policy involved in this case as an agent for Chicago Lloyds and collected payments or premiums for them; that he knew George R. Fisher as a prospect and sold him the policy in March 1933; that he did not receive any payment of premium at that time; that he handed in the application to Chicago Lloyds and got the policy of insurance from them on that application and sent it by mail to Fisher and never got it back.

Continuing, Unger testified that he got $10 from Mr. Fisher on July 24, 1933, to apply on the premium on the policy; that when Mr. Fisher got back from his vacation he told Unger he had had an accident and wanted to know if the company would take care of his loss; that he was the only man from Chicago Lloyds that Fisher ever dealt with; that the last time he saw him was when he told him of the accident. Over objection Unger further testified that he tried to give the money that Fisher had given him to the Chicago Lloyds but that they would not accept it; that he then took the money to Mandel Brothers the following day and tried to contact Mr. Fisher who worked there, but he was out, so he put the $10 in a note and explained that it was not enough to take care of the earned premium and that if he, Fisher, wanted to pay the premium to get in touch with him; that he put the money in an envelope at Mandel Brothers window trimming department. There is no evidence that Fisher ever received this money back.

The evidence further shows according to the books of the company, that the policy was issued not as a

cash sale but on terms of 30, 60 or 90 days and the witnesses testified that the premiums were to be paid on the basis of one-third in 30 days, one-third in 60 days and one-third in 90 days.

Cyril A. Farwell, the assistant secretary of the Associated Underwriters testified that one of his duties was to supervise agents, salesmen and producers; that he hired Mr. Unger sometime in 1933; that agents may have collected premiums at times from assureds; that the agents solicited insurance and gave to the prospective assureds premiums terms; that the agents delivered policies without having the money paid over for the premium; that in many instances the policies were mailed direct to the assureds and occasionally the courtesy was extended to having the agents deliver the policies to the assureds.

It further appears from the evidence that on July 11, 1933, the garnishee wrote to Fisher, the assured, as follows:

"You are Hereby Notified, That payment HAS NOT BEEN MADE AT THIS OFFICE of the premium $36.00 for Policy No. 72229, of Chicago Lloyds, Dated March 13, 1933, for 1 yr Covering 1932 Buick Coupe and unless Premium thereon shall be paid to us on or before 12 o'clock noon, of July 17, 1933, we shall cancel the Insurance under said Policy upon our books, for Non-payment of Premium, without further notice and terminate our liability thereunder from that date. You will be held liable for the pro rata earned Premium thereon."

The evidence further shows that thereafter on September 26, 1933, the claim agent wrote Fisher a letter in which he stated that the policy No. 72229 had been canceled as of July 17, 1933, for nonpayment of premium and that Chicago Lloyds were entitled to the earned premium of $12.45 for the time this policy was in force. It further appears that when the so-called

cancellation on the books took place as of July 17, 1933, the policy in fact was not physically canceled on the books until July 31, 1933; that the cancellation was entered on July 31, 1933, but dated back to July 17, 1933.

The main defense of the garnishee in this case appears to be the cancellation of the policy. The clause of the insurance policy regarding cancellation, reads as follows:

"This Policy shall be cancelled at any time on the written request of the named Assured, or by the Underwriters through Associated Underwriters, Inc., their Attorney-in-Fact, upon giving five days' written notice of such cancellation to the named Assured. . . . Notice of cancellation by the Underwriters shall be sufficient when mailed to the address of the named Assured stated in the policy schedule. . . ."

The letter to Fisher, dated July 11, 1933, upon which the garnishee relies as being a cancellation of the policy, and which we have quoted above, sets forth that some future action by the company would be taken. It is quite evident that the company did not intend to cancel the policy if the premium was paid within the time specified, but if it was not paid, the company would then take further steps to effect a cancellation "on the books" for the letter says: ". . . unless Premium thereon shall be paid to us on or before 12 o'clock noon, of July 17, 1933, we shall cancel the Insurance under said Policy upon our books. . . ." There is no evidence in the record that any future action was taken, of which Fisher had notice except the letter of the claim agent dated September 26, 1933. A case somewhat similar to this was before this court, being *McNellis v. Aetna Ins. Co.,* 176 Ill. App. 575, wherein the court said: ". . . the notice which Scott says he served upon the plaintiff does not purport to cancel the policy. It merely states that unless the premium be paid by a certain date, 'We

*shall* cancel the policy.' Such a notice is not, in itself, a cancellation (*Newark Fire Ins. Co. v. Sammons,* 110 Ill. 166). . . .''

In *Newark Fire Ins. Co. v. Sammons,* 110 Ill. 166, the court in affirming a judgment against the company, said: ''As to the other instruction, it only declares that a mere notice of an intention to cancel a policy of insurance, and nothing more, is not a cancellation of a policy. This could not mislead, and under the testimony before the jury it was proper. The intention of the insurer to cancel a policy could surely have no effect upon the contract of insurance until carried into execution,—and such is the doctrine of the instructions.''

It is a doctrine in this State that where a question arises as to the legal construction to be placed upon the language of an insurance policy, the same should be strictly construed in favor of the insured. This doctrine would be particularly applicable in a case such as the one before us where it relates to the company having the right of cancellation, as forfeitures are not favored in the law.

As was said in *Budelman v. American Ins. Co.,* 297 Ill. 222, at page 227: ''It is a well recognized rule of construction that an insurance contract will be construed in favor of the insured, . . . and the courts will not forfeit a policy except where a clear right of forfeiture is shown.''

In addition to this, as before stated, the evidence shows that the employee who was to have done the canceling of the policy on the books of the company, did not do so until July 31, 1933, but that she dated the cancellation as of the 17th. In the meantime, the evidence tends to show that $12, or some similar amount, had been paid to the agent Unger, whom the evidence shows had accepted payment on account of the premium, as had been his custom as well as the

custom of other agents working for the company. Therefore, there is a question as to whether or not the cancellation could be considered as effectuated.

It is contended by the garnishee that the agent Unger did not have any authority to represent the company in this respect. Whether he did or not was a question of fact. As was said in *Phenix Ins. Co. v. Stocks,* 149 Ill. 319, at page 335: "Persons dealing with an agent can not know, nor are they required to know, the limitations upon his power to represent his principal. The company is bound by the acts of its agent in the exercise of powers within the apparent scope of his authority, unless limitation upon such powers is brought to the notice of the assured. . . . Whether this agent was apparently clothed with authority to represent the company in the adjustment of this loss, or to accept service of the demand and notice for arbitration, under the conditions of the policy, was a question of fact, to be determined by the jury upon consideration of all the facts and circumstances proved."

Whether or not Unger had authority in fact as agent for the garnishee and whether or not the acceptance by him of the money from Fisher (if there was such acceptance) was a waiver of what might be considered a breach of the contract, and whether or not insurer did not waive the breach of the contract by accepting payment of premiums, the Supreme Court said in the case of *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill. 369, at page 371: "The question as to what facts are necessary to constitute a waiver is a question of law. The existence of such facts in a given case is a question of fact. The Appellate Court found that the right of the insurer to insist on the lapse of the policy for failure to pay the premium within the time required had been waived by its conduct. What that conduct was is a question of fact and is not open to review

here, but it must be taken as established that the plaintiff in error had at previous times accepted payments on this policy after the thirty-one days of grace had expired."

As was said in the case of *Shaw v. Fireman's Ins. Co.*, 269 Ill. App. 83, at page 85: "There were sufficient facts in the proof, if true, to constitute a waiver on the part of the company of the above provision and the existence of such facts was a question for the jury."

See also, *Milwaukee Mechanics' Ins. Co. v. Schallman*, 188 Ill. 213.

There are questions of fact involved in this controversy which, of necessity as well as in harmony with the law in relation thereto, should have been submitted to the jury. This court, in following the Supreme Court in the rules.laid down as to when a case should be taken from a jury, has many times recited the rule. When motions are made at the close of all the evidence to instruct the jury for defendant, courts are not to concern themselves with the weight of the countervailing testimony and they should not weigh the same or consider whether the greater weight or preponderance of the evidence is on one side or the other, but they should take the evidence which is most favorable to the plaintiffs, together with all the legal inferences that may be drawn therefrom, and if it can be said that such evidence tends to prove the cause of the plaintiffs, then it is the duty of the trial courts to overrule such motions. To do otherwise would be to deny the right of trials by jury.

As the Supreme Court, said in *Minnis v. Friend*, 360 Ill. 328, 335:

"In passing upon a motion to direct a verdict the trial court is limited to determining whether there is or is not any evidence which tends to prove the facts

alleged. When a jury is not waived the trial court has no power to determine the weight and preponderance of conflicting evidence introduced to establish or to disprove these facts, and the court is never authorized to take a case from the jury where to do so would involve the determination of the preponderance of the testimony.''

In the case of *Kinsey v. Zimmerman*, 329 Ill. 75, the court at page 79, said: ''. . . and the trial judge is never authorized to take a case from the jury or direct a verdict for the plaintiff where to do so would involve the determination of the preponderance of the testimony, but that court is limited strictly to determining whether there is or is not any evidence legally tending to prove the fact alleged; and this is true even though it appears that the greater weight of the evidence may be on one side or the other; . . .''

Whether or not Unger was an agent of the company, the extent of his authority and whether or not he bound the company by his actions, were all questions of fact and they should have been submitted to the jury.

On the question of the motion for a new trial, the same is not argued by the plaintiff although it is by the defendant. Defendant alleges that no proper effort was made to obtain Fisher as a witness at the trial nor was there any attempt made to take his deposition. Without going into the matter in detail, we think Fisher's evidence was very necessary at the hearing and that every reasonable effort was made by plaintiff to secure Fisher's presence or his deposition. We think the trial court could well have granted a new trial on the showing made as to the absence of the witness Fisher.

Other errors are assigned, but as this case must be retried, we do not think it necessary to discuss them

at this time and, no doubt, the errors which were made at the former trial can be corrected when the case is tried again.

We are of the opinion that the trial court erred in instructing the jury to return a verdict for the defendant and for that and other reasons mentioned in this opinion, the judgment of the superior court is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL, P. J., and HALL, J., concur.