This is a suit resulting from an automobile collision on a policy of collision insurance covering an automobile owned by the plaintiff. The defense is that the policy had been legally cancelled on account of non-payment of premium by the insurer before the collision occurred. Plaintiff has appealed from a judgment sustaining the defense and dismissing his suit.
On June 18, 1947, the Hardware Indemnity Insurance Company of Minnesota, hereinafter referred to as the Indemnity Co., and the Hardware Mutual Insurance Company of Minnesota, hereinafter referred to as the Mutual Company, issued a joint policy of insurance to plaintiff covering his four door Oldsmobile Sedan for a period from June 12, 1947, to June 12, 1948, 12:01 A.M. The Indemnity Company covered the public liability, property damage, and comprehensive (loss or damage to the automobile, except by collision) and the Mutual Company covered the loss or damage to the automobile by collision or upset. The total premium was $80.44, divided as follows: $32.44 to the Indemnity Co., and $48 to the Mutual Company. It appears that the Indemnity Company is the parent company and that the Mutual Company is the subsidiary thereof.
Amongst the conditions, the policy provides that the policy may be cancelled by either the insured or the insurer. If by the insured, the insured shall surrender the policy or shall mail to the company written notice stating when thereafter such cancellation shall be effective. If the insured cancels the policy, the earned premium shall be computed in accordance with the customary short rate table and procedure. If cancelled by the company, the company shall mail to the named insured at the address shown in the policy written notice stating when not less than five days thereafter such cancellation shall be effective. "The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing." "If the company cancels, earned premiums shall be computed pro rata. Premium adjustments may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund or premium to the named insured."
In the initial policy, the name of the insured is stated to be "H. D. Ellvey, address Apt. M-9, L. S. U. Campus, Baton Rouge, East Baton Rouge Parish, Louisiana." On July 15, 1942, by appropriate rider issued by the companies, the name of the insured was amended to read "H. D. Ellzey."
At the time of the issuance of the policy, the insured did not pay the premium or a part thereof. It appears that the plaintiff assured signed a document, termed "Note" by plaintiff's attorney and "contract" by defendant's attorney, yet on the reverse thereof termed "Invoice Contract," being date of July 16, 1947, and addressed to the Indemnity Company. This document provides that:
"In consideration of your advancing on behalf of the undersigned the balance of the premiums due on the policies listed on the reverse side hereof, the undersigned agrees to pay you or your assigns at such place as you may designate the payments provided for on the reverse side hereof. Failure ofthe undersigned to pay any installment when due (time being of the essence hereof) or in the event of any change affecting the amount of return premiums, you or your assigns may declare all installments due and payable, and the undersigned hereby assigns to you or your assigns all sums by way of return premiums under said policies which shall be applied by you, in the reduction of, or in full liquidation of the amount due you, the surplus, if any, shall be paid to the undersigned, and theundersigned shall continue to be liable for any unpaid balance *Page 26 thereafter. The undersigned also assigns to you or your assigns out of the proceeds of any loss payable to the undersigned, an amount sufficient to liquidate the balance due you, and any check issued by the insurance company shall be payable both to you and your assigns and the undersigned.
"Until you have been paid the full amount due you, the undersigned irrevocably appoints you or your assigns attorney-in-fact with full and sole authority to effect cancellation of policies and receive and receipt for any of the return premiums due under said policies.
"It is understood and agreed that no cancellation of policies under this agreement shall be effected without first giving to the undersigned five (5) days written notice of intention to cancel by mail, sent to the address given hereon, which notice need not be registered. If payment due is not received in five (5) days of date of said mailing, you or your assigns may exercise your right to surrender the policy/policies to the insurance agents or companies involved and receive the return premiums due thereon. Default occurring and being remedied within the said five (5) day period, the undersigned agrees to pay you or your assigns your or its customary late charge.
"It is understood and agreed that you may assign thisagreement and all your rights thereunder and in and to the collateral thereto to First Bancredit Corporation of St. Paul, Minnesota, and thereupon said assignee shall become vested with all the powers and rights hereinabove given to you in respect to this agreement and said insurance policy or policies or return premiums thereon or proceeds thereof. The undersigned agrees that any payment received by you or your assigns subsequent to five (5) days after the date of the notice of intention to cancel shall be accepted for deposit subject to refund without the policies on which such installment payment of premium is so offered being thereby reinstated, or default in this agreement being thereby waived."
On the face of this document, there appears this endorsement signed by the Indemnity Co.
"For and in consideration of the payment to the undersigned or order in amount equal to the balance due as shown on the reverse side hereof, the undersigned sells and assigns (without recourse against undersigned for any default of assured), all right, title and interest in and to the foregoing contract and in and to all sums payable thereon and collateral security covered thereby, to First Bancredit Corporation. Payment of the balance due as shown on the reverse side hereof to the insurance company or companies issuing the policies covered thereby, or its or their authorized agent or agents, is hereby acknowledged as payment made to the undersigned."
On the reverse of the document, the total premium is given as $80.44, down payment as $16.09, balance due $64.35 (to be paid in eight monthly installments, the first payment to be $8.26 due on "7-12-47," and the payments thereafter to be $8.22 "beginning 8-12-47").
It is undisputed that the policy of insurance was originally written by R. B. Means, an insurance agent residing in Baton Rouge and representing the companies, on June 18, 1947, effective June 12, 1947 for a period of one year.
On August 1, 1947, plaintiff issued his check payable to R. B. Means for the sum of $16.09. Means endorsed the check payable to Indemnity Co. The check was deposited by Hardware Insurance on August 12, 1947, and was paid by the drawee bank on August 16, 1947.
On August 4, 1947, R. B. Means, for plaintiff's account, sent his check to Indemnity Company for the sum of $8.26, drawn on the Fidelity National Bank of Baton Rouge, La. This check was endorsed and deposited by Hardware Insurance on November 2, 1947, and paid by the drawee bank on November 6, 1947.
On September 10, 1947, plaintiff issued his check payable to Means, drawn on the Louisiana National Bank of Baton Rouge for the sum of $8.26. This check was forwarded by Means to Indemnity Company and by it endorsed and deposited on November 2, 1947, and paid by the drawee bank November 7, 1947. *Page 27 
On October 6, 1947, plaintiff issued his check payable to Means, drawn on the Louisiana National Bank of Baton Rouge, for the sum of $8.26, which was deposited by Means on October 10, 1947, and paid by the drawee bank on October 11, 1947. According to Means's testimony, on October 23, 1947, he purchased a money order payable to Indemnity Company, in the sum of $8.26 and sent it to said company to be applied to plaintiff's account. This money order, according to the evidence in the case, was not deposited by Indemnity Company for credit before November 2, 1947.
On November 3, 1947, the companies mailed to plaintiff, at the address given in the policy, a notice of cancellation, viz.: "The undersigned hereby give notice that Policy No. 715603 effective June 12, 1947 will be cancelled on the 13th day of November, 1947, at 12:01 o'clock, A.M. standard time.
"Payment of $39.57 premium, prior to the effective date of this notice, will keep this policy in force."
The total amount paid by the plaintiff prior to the issuance of this notice amounted to $40.87. According to the contract, he should have paid $49.01. According to the testimony in the record, the policy was cancelled because the monthly installments were not punctually paid, being in arrears in the amount of $8.14.
On November 15, 1947, plaintiff executed his check payable to Means, drawn on the Louisiana National Bank, for the sum of $8.26, with the following notation in the left hand corner: "Policy No. 715603." Means cashed this check on November 19, 1947, and did not remit the proceeds to the Indemnity Company.
On November 22, 1947, the automobile was damaged by collision with a tree to the amount of $517.79. Plaintiff notified Means of the collision on November 25, 1947. In this appeal, he is claiming this amount less $50 under the deductible clause, or $467.79.
Plaintiff testified that on or about July 15, 1947, he advised Means that he was unable to pay the full premium as called for in the policy but that he desired to continue the collision coverage. He was prevailed upon by Means to keep the policy, in that Means "would see him through." Means informed him that he could make a down payment and defer the balance due in monthly payments. Means prepared the document supra, which he signed. He was led to believe that when he made the down payment in August, the policy would be in full force if thereafter he made monthly payments of $8.26 during the succeeding months; that he then informed Means of his correct name and gave him his business address. Although Means denies, in his testimony, the material part of plaintiff's testimony, yet Means admits that he did promise to help plaintiff in his monthly payments if plaintiff would advise him in advance of his inability to pay the monthly installment or installments as they became due. The fact remains that plaintiff is corroborated by the fact the endorsement showing his correct name is dated July 15, 1947, and the document is dated July 16, 1947. Further the down payment check is dated August 1, 1947, and Means' check is dated August 4, 1947. According to Means, he issued this check in order to put the policy of insurance in force and to bring the payments up to date. Yet this evidence is not corroborated by any circumstances. It is just as reasonable to believe that this payment was the August installment instead of the July installment.
We are not impressed by the testimony of Means in that we find many conflicts in his testimony. For instance, in one part of his testimony, he states that he cashed plaintiff's check of November 15, 1947, and kept it as his own because he knew the policy had been cancelled, yet he only ascertained on November 25, 1947, that the policy had been cancelled effective November 13, 1947. Believing the plaintiff, he was not in arrears when defendant sought to cancel the policy.
Furthermore was not plaintiff justified in believing that he was not in arrears?
All the checks issued by plaintiff applying to the payment of the premium were all made to Means. Means delayed to transmit some of the checks or proceeds thereof. The company received these checks or proceeds and kept them, *Page 28 
save the down payment, until November 2, 1947, without advising plaintiff that these payments were not in accordance with his contract, and that Means was not authorized to accept these payments. These facts clearly mislead plaintiff in his belief that he was meeting his "Invoice" contract. "It is the general rule with respect to policies requiring the periodical payment of premiums and providing for a forfeiture for failure to pay on the day named, that if the insurer customarily receives overdue premiums from the insured, and thereby induces him to believe that a forfeiture will not be incurred by a short delay in the payment of premiums, it cannot insist on a forfeiture for a delay induced by such custom." Am.Jur. Vol. 29, page 657, Insurance Sec. 860.
We furthermore find merit in plaintiff's contention that it was up to First Bancredit Corporation to give the notice of cancellation of the policy and not the companies. The document or "Contract Invoice" had been assigned to First Bancredit Corporation. In this assignment, all rights, title and interest of defendant had been assigned to it. The companies had no more right unless it showed that the First Bancredit Corporation had called upon them to reimburse its purchase price. This has not been shown. We seriously doubt if the First Bancredit Corporation could have done so in that the transfer of the "Invoice Contract" specifically states that it is "without recourse against undersigned for any default of assured." In other words, according to this "Invoice Contract," the plaintiff was irrevocably bound unto the First Bancredit Corporation for the whole premium. The original "Invoice Contract" was not filed in evidence and has not been returned to plaintiff by the First Bancredit Corporation and marked "paid." The fact that the "Invoice Contract" is not negotiable does not alter the case. It is now a contract between plaintiff and First Bancredit Corporation for the payment of money which can be enforced.
Reverting to the notice of cancellation, we fully agree with the trial judge and the defendant that notice of cancellation may be sent by mail, and mailing in accordance with the terms of the Policy, at the address shown on the policy, is sufficient regardless of actual receipt of the notice by the insured, in the absence of any other facts. However, in this case, we believe that plaintiff, on July 15, 1946, informed Means of his correct business address and that he was not receiving mail at the address given in the initial policy. It was Means' duty, as agent of the companies to have corrected the address as well as the correct name of plaintiff. Means corrected the name only. The address given on the notice is on the L. S. U. Campus. There is no evidence showing that there is house mail delivery on the Campus, a fact which we seriously doubt existed. For that reason we seriously doubt that plaintiff received the notice. The companies were bound by the knowledge of their agent of the correct business address of the plaintiff and the notice to have effect should have been correctly addressed. However, let us look at this notice. We are of the opinion that the notice was insufficient. The notice must clearly and unequivocally show a present cancellation. In the notice there is a condition, viz.: "Payment of $39.57 premium, prior to the effective date of this notice, will keep this policy in force." By simple calculation, the amount of $39.57 is the outstanding amount due on the whole premium. To our way of thinking, the notice is merely a demand for the payment of the balance due. "It has been held that a notice stating that, unless the premium is paid by a certain date, the policy will be canceled is insufficient." 45 C.J.S., Insurance, § 450, page 89, note 77, citing Automobile Underwriters of Des Moines, Iowa, v. Bloemer, 8 Cir., 94 F.2d 474; Fisher, for use of Kiniry, v. Associated Underwriters, 294 Ill. App. 315,13 N.E.2d 809, 32 C.J. p. 1249 note 93; 26 C.J. p. 138 note 57.
There is another reason in which we find merit. According to defendant's evidence there was the sum of $6.92 due the plaintiff as unearned premium on the date of cancellation, that is, November 13, 1947. Our figures show slightly more, but we will grant that defendant's figures are correct. "The return or tender of the unearned premium to the insured is generally *Page 29 
a condition precedent to cancellation of a policy by the insurer." 45 C.J.S., Insurance, § 451, page 96. According to the terms of the policy the unearned premium was to be made at the time of cancellation or as soon thereafter as could be made. The evidence shows that it was made on November 21, 1947. The evidence shows that a check presumably payable to the order of plaintiff, together with notification of cancellation, was mailed to Means, defendant's agent at Baton Rouge. The accident happened on November 22, 1947. It is reasonable to presume that Means received this check and notification after the loss had occurred. We gather from Means' testimony that the check was tendered to plaintiff on November 25, 1947 (that is the date Means admitted that he was informed of the cancellation), and that plaintiff refused it. He then mailed it to plaintiff and plaintiff mailed it back to him. This procedure was followed several times. Suffice it to say that the purported check was not offered in evidence. It is now well established that "tender of the unearned premium after loss under the policy is insufficient to effect a cancellation as of a prior time." 45 C.J.S., Insurance, § 451, p. 100, note 87, and the cases thereunder cited.
As to the effect of the check issued by plaintiff on November 15, 1947, the plaintiff testified that he had not received the notice of cancellation prior to the mailing of the check to Means. The trial judge was of the opinion that it was a belated effort on his part to keep the policy in force. We are forced to disagree with him. He had dealt with Means as the authorized agent of the companies. He had not been notified that Means had no authority to accept the monthly payments. As to Means retaining the amount, we feel that his testimony on that score is an after-thought. He cashed plaintiff's check of October 6, 1947, on October 10, 1947, and he did not remit to the Indemnity Company before October 23, 1947, some thirteen days thereafter. It is more reasonable to believe that he intended to do likewise with the check of November 15, 1947, than to assert that he kept the proceeds to reimburse himself.
It is elementary that the insurer carries the burden of establishing the facts which relieve or limit his liability. In this case, it is our opinion that the defendant has not borne the burden of proof of its special plea of cancellation. To the contrary, we are of the opinion that plaintiff has clearly shown that the policy was in force at the time of the collision.
For these reasons assigned, the judgment appealed from is annulled, avoided and reversed. It is now ordered that there be judgment herein in favor of plaintiff, H. D. Ellzey and against the defendant, Hardware Mutual Insurance Company of Minnesota, in the full sum of Four Hundred Sixty-seven 79/100 ($467.79) Dollars, with legal interest thereon from judicial demand until paid, and all costs.