State Farm Mutual Automobile Insurance Company, an Illinois Corporation, Plaintiff-Appellee, v. Esther Berke, a/k/a Tess Berke, Dr. A. N. Berke, John Teresi Chevrolet-Oldsmobile, Inc., an Illinois Corporation, Defendants-Appellants.

Gen. No. 69-192.

Second District.

May 21, 1970.

Philip M. Bloom, Frank, Bloom, Stern & Starr, of Chicago, for appellants.

William E. Hartnett, Hartnett, Corcoran and Pease, of Waukegan, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

State Farm Mutual Automobile Insurance Company issued a policy of automobile insurance covering liability insurance for personal injury and property damage to Dr. A. N. Berke as Named Insured and his wife, Esther Berke, as Additional Insured, for a 1964 Pontiac automobile owned by Dr. Berke. The provided coverage was extended to the use of a nonowned automobile by "(a) the first person named in the declaration or, (b) if residents of the same household, his spouse or the relatives of either, and (c) Any other person or organization legally responsible for the use by such named insured, spouse or relative of an automobile not owned or hired by such other person."

A nonowned automobile was defined in the policy as follows:

> "NonOwned Automobile—means an automobile or trailer not
> "(i) owned by,
> "(ii) registered in the name of, or
> "(iii) furnished or available for the frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household, other than a temporary substitute automobile."

On September 7, 1966, Esther Berke was involved in an accident while driving a 1966 Oldsmobile in which a pedestrian and a motorcyclist were seriously injured. State Farm brought a declaratory judgment action that sought

a determination of its obligations under the policy for the accident. The trial court found that the 1966 Oldsmobile was not a nonowned automobile as defined by the policy and that State Farm had no liability thereunder. The Berkes and John Teresi Chevrolet-Oldsmobile, Inc. appeal.

The record discloses that Dr. Berke had been ill and his medical practice was temporarily interrupted. However, in July, 1966, he regained his health and resumed his practice. At that time, he owned the 1964 Pontiac and needed a second car for use in his profession. In early July, Dr. Berke contacted John Teresi, the president of John Teresi Chevrolet-Oldsmobile, Inc., an automobile dealership, in regard to a rental of an additional automobile. Teresi informed him that rental services were available, and on July 11 or 12, Dr. Berke visited the dealer and was referred to a Mr. St. Pierre.

Dr. Berke signed a rental agreement with Lakes Leasing, a separate corporation but located at the same address as the dealership and apparently owned by the same parties, for a 1967 Oldsmobile "98." St. Pierre computed the monthly rental which, at the specific request of Dr. Berke, was to include insurance coverage, in the amounts of $100,000/$300,000 for personal injuries, at $165. Since 1967 models were not available, it was agreed that Dr. Berke would use a 1966 Oldsmobile demonstrator until the new automobiles were delivered. Dr. Berke took the car and used it continuously until the date of the accident.

At the end of July, Dr. Berke received a statement from Lakes Leasing for $330 for the first and last months' rental which he paid on August 6. Both John Teresi and St. Pierre were insurance brokers and agreed that the rental contract was to include insurance coverage. Although Dr. Berke explained that he needed the automobile for his medical practice, no restrictions on the

use were made or even discussed. Berke also made a September payment and on November 1 was furnished a new automobile which he continued to rent until the lease was cancelled in September, 1968.

On September 7, 1966, Dr. Berke drove the 1966 Oldsmobile from his home in Antioch to a hospital in Waukegan. His wife accompanied him and took the car from the hospital for a shopping trip in Waukegan after which she was to return to the hospital to pick up her husband. While on the trip, Mrs. Berke had the accident that gave rise to a multiplicity of lawsuits. It developed that the insurance carried by Lakes Leasing for rented automobiles was not applicable since the 1966 Oldsmobile was not owned by that corporation but was a demonstrator consigned to John Teresi Chevrolet. The garage policy that covered the latter corporation was likewise not involved since that policy specifically excluded rented automobiles.

The trial court concluded that the State Farm policy did not extend coverage since the 1966 Oldsmobile was furnished for the regular use of Dr. Berke and was available for the frequent and regular use of Esther Berke and was not, therefore, a nonowned automobile. The court further ordered that John Teresi Chevrolet-Oldsmobile, Inc. indemnify and hold harmless the Berkes against all claims arising from the accident and to assume the defense of those claims within the limits discussed by St. Pierre and the doctor.

The appellants contend that State Farm failed to establish by a preponderance of the evidence that the 1966 Oldsmobile was not a nonowned automobile as defined by the policy and that the finding of the trial court that it was "available for the frequent and regular use" of Esther Berke was against the manifest weight of the evidence.

Dr. Berke could not recall any specific occasion prior to September 7 that his wife used the Oldsmobile

458

but he did testify that "she might have driven it." Esther Berke testified that the car was used principally by her husband in his practice but that she did drive it on two or three occasions prior to the accident. Since Dr. Berke conducted his practice from his home and there was no evidence of any restrictions placed on the use of the Oldsmobile by Esther Berke, the conclusion of the trial court that it was available for her frequent and regular use was not against the manifest weight of the evidence.

The "nonowned automobile" and "drive other cars" provisions of automobile liability insurance policies have been a fruitful field for litigation. The cases of Rodenkirk v. State Farm Mut. Automobile Ins. Co., 325 Ill App 421, 60 NE2d 269 (1945) and Schoenknecht v. Prairie State Farmers Ins. Ass'n, 27 Ill App2d 83, 169 NE2d 148 (1960) remain as the leading Illinois cases on the point and an extensive discussion is contained in Volume 86 of the American Law Reports (Second Series) at page 925 and forward.

In the Rodenkirk case, the plaintiff had a State Farm policy for his own Chevrolet that included coverage for his use of "other" automobiles unless the other automobile was, among other exceptions, "furnished for (his) regular use." John J. Meyer was engaged to Rodenkirk's daughter and when he was inducted into the service he gave to them his Dodge automobile for their use while he was away. Meyer testified that Rodenkirk was to maintain the car and use it "as he saw fit." Rodenkirk was involved in an accident with Meyer's car and after judgment had been entered against him brought a garnishment proceeding against State Farm under the "other automobile" coverage.

The court held that Meyer's car was furnished to Rodenkirk for his regular use and that there could be no recovery under the terms of the policy.

In Schoenknecht, the plaintiff had a policy on his Buick automobile that included liability coverage for other au-

tomobiles except those furnished for his regular use. Schoenknecht's employer furnished a Chevrolet for his use during the working day that was to be returned each night to the shop. On one occasion, he completed his work but instead of returning the car, proceeded to visit friends and, many hours later, was involved in an accident. The court held that his own policy extended coverage to him since at the time of the accident the Chevrolet was not furnished for his regular use but was, instead, on unauthorized use.

█ The distinction between the cases is obvious. In Schoenknecht, and the cases cited by the appellants from other jurisdictions, the driver's use of the automobile was, in one sense or the other, restricted. The automobiles were not either furnished or available for regular use to the drivers but were available only on occasions determined by some other condition such as obtaining specific permission from the owner or in the course of employment. As pointed out in Rodenkirk, if the automobile is available for regular use it is not determinative how often it is in fact used.

██ As an abstract principle of law, we agree with the further contention of the appellants that ambiguous clauses in a policy of insurance should be construed most favorably to the insured. Marshall v. Metropolitan Life Ins. Co., 337 Ill App 498, 509, 86 NE2d 262. However, language in the policy will not be perverted to create an ambiguity where none exists. Lakatos v. Prudence Mut. Cas. Co., 113 Ill App2d 310, 316, 252 NE2d 123; O'Daniell v. Missouri Ins. Co., 24 Ill App2d 10, 14, 164 NE2d 78. We find no ambiguity in the pertinent sections of the policy before us and therefore conclude that the judgment of the trial court is correct and should be affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.