JAMES E. MITCHELL, *vs.* HENRY BURNETT, Defendant-Appellee.—(THE FARMERS INSURANCE EXCHANGE, Intervenor-Appellant.)

(No. 70-34;

Fifth District—August 13, 1971.

Gosnell, Benecki, Quindry, of Lawrenceville, (Maurice E. Gosnell, of counsel,) for appellant.

Conger & Elliott, of Carmi, (Ivan A. Elliott, Jr., of counsel,) for appellee.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal by the intervenor-appellant, Farmer's Insurance Exchange, from a declaratory judgment entered against it by the Circuit Court of White County. The sole issue is whether defendant's liability policy issued by appellant was in effect on May 7, 1965, the date of an accident involving plaintiff's tractor and defendant's automobile, or whether, as contended by appellant, it had been effectively cancelled for non-payment of premium prior to said date.

The facts are not in dispute. On February 8, 1965, defendant, a resident of Mesa, Arizona, contacted an agent of appellant and made application for a policy on his newly purchased automobile. The application was transferred to Mid Century Insurance Co., an affiliate of appellant, and on March 12, 1965, this company sent defendant a notice clearly entitled "Notice of Cancellation" in large red caps, informing defendant that his policy was cancelled effective at 12:00 noon on March 26, for certain reasons which later proved to be inapplicable. When appellant's agent informed it of the mistake a policy was then issued by appellant itself effective from the original date of the application to August 8, 1965. This policy was then personally delivered to defendant by said agent. Payment of the premium was not requested at this time, nor did defendant pay it as he wanted to include it in his financing arrangement with the bank carrying his mortgage on the car. Later, though the agent tried to intercede for defendant, the bank refused to include the premium in its note and the premium was never paid.

Appellant's Policy Service Division Manager testified by deposition that the billing on the policy does not indicate when the billing is due, that it is company practice to send a "reminder or follow-up" to the insured informing him when he has to pay. He stated further that on April 10, 1965 a notice entitled "Avoid Cancellation" was sent to defendant requesting payment of $53.60 which notice read as follows:

"We wish to remind you that your premium shown above has not been paid, and to notify you accordingly that the insurance coverage indicated above will be cancelled and all liability of this exchange will cease at 12:00 noon on the cancellation date shown (April 25, 1965). However, if we do receive full payment before 12:00 noon on said cancellation date, your policy will be continued in force without any interruption in your protection."

This notice was sent to defendant in compliance with policy provisions, to the address shown on the policy but it was returned to the company unclaimed. No such notice was sent to defendant's mortgagee. On April 22 a "Notice of Returned Mail" was sent to appellant's agent stating, "Help us locate insured. Check your records for evidence of a new address. Telephone insured at his place of business. Telephone his mortgagee." The agent checked only at the address of defendant where he had previously contacted defendant and was informed by a stranger that defendant had moved to Ohio which information he passed on to appellant. On May 7, the date of the accident, a further notice was put into the mail to defendant which the witness described as a "final cancellation which is a follow-up to the Avoid Cancellation notice." This final cancellation entitled "Notice of Cancellation", in large red caps, recited the amount of the premium, a cancellation date of April 25 at 12:00 noon, and further informed defendant that if full payment were made at any of the company's offices within 60 days from the cancellation date coverage would be placed in force from the date payment was received.

The witness testified further concerning a later reinstatement of the policy on payment of the premium by defendant's sister and a later cancellation on her demand for a refund, but we have not detailed this testimony as it is only the effect of the Avoid Cancellation notice that is relevant to the issue of coverage on May 7, 1965, the date of the accident.

■ It is conceded by both parties that the construction of the policy, entered into in Arizona, is governed by the laws of Arizona. Appellee points out, however, that there is no decision in Arizona on the particular question involved here, and argues that in the absence of pleading or proof of such a decision it will be presumed that the law in Arizona would be the same as in Illinois. We agree. As stated in 29 Am. Jur. 2d 243, Evidence, Sec. 191, unless the court's attention, is directed to a decision of another state bearing on a question before it, the law will be presumed to be the same as that of the forum. This same rule is reiterated in *In re Estate of Day*, 7 Ill.2d 348 and in *McCallum v. B. & O. RR. Co.*, 379 Ill. 60. Attempting to answer this argument appellant contends that the question is one of first impression in Arizona and in such instances Arizona tends to follow the decisions of the reviewing courts of California and that therefore precedents from the latter state are controlling here. The cases cited by appellant do not meet the issue. In *Sandoval v. Chenowith*, 102 Ariz. 241, 428 P.2d 98, the court followed California's interpretation of Arizona's Financial Responsibility Law because it had previously done so. In *Fertig v. State*, 100 Ariz. S. Ct. 1913, 14 Ariz. 540, 133 P. 99, the court followed California's interpretation of

a criminal statute because Arizona's code was based on that of California. In the case of *In re Estate of McConnell*, 101 Ariz. 538, 421 P.2d 895, the same interpretation was given to the Probate Act because Arizona's statute was identical to that of California. The fact that Arizona has seen fit to follow California in three isolated instances having no bearing or even remote relationship to the question before us does not, in our opinion, establish that Arizona would dutifully and necessarily follow California in all matters of first impression. We conclude that the rule first above cited is controlling and that the question must be governed by the existing precedents in Illinois.

█ It is the general rule in Illinois that where a question arises as to the legal construction to be placed upon the language of an insurance policy, the same should be strictly construed in favor of the insured. In *Fisher for use of Kiniry v. Associated Underwriters, Inc.*, 294 Ill.App. 315, it held that this doctrine is particularly applicable in a case involving a company's right of cancellation, as forfeitures are not favored in the law. The cancellation notice in that case read that "* * * unless the premium thereon shall be paid to us on or before 12 o'clock noon of July 17, 1933, we shall cancel the insurance under said policy upon our books, for Non-Payment of Premium, without further notice and terminate our liability thereunder from that date." The court held that such language "sets forth that some future action by the company would be taken. It is quite evident that the company did not intend to cancel the policy if the premium was paid within the time specified, but that if it was not paid, the company would then take steps to effect a cancellation 'on the books' * * *."

In *Burnett v. Illinois Agricultural Mut.*, 318 Ill.App. 629, the cancellation notice was in the form of a letter stating, "We must, however, advise at this time that if you do not renew your affiliation or reinstate your membership in the Farm Bureau, it will become our duty to cancel the above mentioned policy. We are, therefore, notifying you that at 12:01 Central Standard Time, on May 11, 1941, this policy will be cancelled unless we are advised before that date that you have renewed the membership which entitles you to this insurance." The court held that it showed a conciliatory attempt to secure reinstatement of the insured's Farm Bureau membership and did not positively and unequivocally inform him that it was the company's intention that the policy should cease to be binding on the date specified. In *McNellis v. Aetna Insurance Co.*, 176 Ill.App. 575, it was held that a notice of cancellation which informed the insured that unless the premium be paid by a certain date, "We shall cancel the policy", was not in itself a cancellation, but merely a statement of intent to cancel in the future.

The Avoid Cancellation notice upon which appellant bases its alleged cancellation in the case before us is as conciliatory as that in Burnett and contains the same contemplation of some future action as that in both Fisher and McNellis. In fact, its very title is equivocal, leading one to believe that it is an invitation to avoid future cancellation and not a positive cancellation in itself. The reasonableness of this belief is confirmed not only by the fact that an unequivocal final Notice of Cancellation was subsequently sent to insured, but by the fact, as stated by appellant's witness, that it was company practice to send the avoid notice as a reminder or follow-up to the insured informing him of the premium due. It is also noted that this testimony is likewise confirmed by the language of the notice which starts out with the phrase, "We wish to remind you * * *."

Under these circumstances, and in recognition of the principle that the language of an insurance policy should be strictly construed in favor of the insured, it is our judgment that the Avoid Cancellation notice relied upon by appellant was ineffective as a cancellation of the policy, and that on May 7, 1965, defendant was entitled to coverage under his policy. Accordingly, the judgment of the Circuit Court of White County is affirmed.

Judgment affirmed.

EBERSPACHER, P. J. and JONES, J., concur.