Econo Lease, Inc., Plaintiff, *v.* James D. Noffsinger, Defendant and Third-Party Plaintiff-Appellee.—(Farmers Insurance Group, a/k/a Mid-Century Insurance Company, Third-Party Defendant-Appellant.)

(No. 60314;

First District (4th Division)—June 25, 1975.

BURMAN, J., dissenting.

Paulson and Ketchum and Thomas A. Hett, both of Chicago (Serpico, Stamos, Novelle, Dvorak, Navigato and Hett, Ltd., of counsel), for appellant.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Terence J. Tyksinski, Robert S. Milnikel, and Ellen J. Kerschner, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Econo Lease, Inc., a lessor of automobiles, filed this lawsuit against James D. Noffsinger, the lessee. Noffsinger then filed a third-party action against Farmers Insurance Group, his insurer. The litigants initiated discovery and cross-motions for summary judgment were filed on the third-party complaint. The trial court granted Noffsinger's motion for summary judgment and ordered the insurer to defend the principal action on behalf of the insured and to pay fees to Noffsinger's attorneys. The insurer appeals from this order and on review the only question is whether the trial court properly granted summary judgment.

James D. Noffsinger, the defendant and third-party plaintiff-appellee, was issued an automobile insurance policy by Mid-Century Insurance Company, the third-party defendant-appellant. The initial policy provided coverage from March 13, 1968, to September 13, 1968, and was renewable for additional 6-month terms. Noffsinger renewed the insurance policy for another term and it was to expire on October 18, 1969. When Noffsinger received a notice that his insurance premium was due, during the week of October 18, 1969, he went to the offices of the Gridley Agency, agents of his insurer in Omaha, Nebraska. He explained to a woman in the office that he had been transferred from Chicago to Omaha and wanted to pay the premium on his insurance policy. The woman stated that the insured's premium would change as a result of his relocation in Omaha, and she instructed him to wait until another premium notice, with the new rate, was mailed. .

Noffsinger complied with the woman's instructions and waited to hear from the insurance company. He received an "avoid lapse" notice from the insurer around October 29, 1969. It informed him that the policy was in the grace period; that it might lapse; but a call might save the coverage.

On September 19, 1969, Noffsinger signed a lease agreement with Econo Lease, Inc., and rented a 1970 Buick. The lease was for a 24-month period; however, the lessee had the privilege of cancelling the lease if the lessor was given 30 days' notice. On November 15, 1969, the insured picked up the rented car in Milwaukee and drove it for 2 days. While driving from Milwaukee to his home in Omaha, on November 17,

1969, the insured was involved in an automobile accident in the leased car in Missouri Valley, Iowa. Repairs, appraisal fees and unpaid rental, less lease deposit, amounted to $2,900.15. Shortly thereafter, around November 19, 1969, the insurer sent the insured a "policy lapsed" notice which stated that the insured's insurance policy had lapsed as of 12 noon October 18, 1969, and that payment within 60 days from the lapse date would reinstate his insurance coverage after the date payment was received.

In August 1970, Econo Lease, Inc., filed a lawsuit against Noffsinger for damage to the rented automobile, and he filed a pro se answer to the complaint. Noffsinger engaged private counsel and on March 13, 1971, he filed a third-party complaint against his insurer alleging that the insured's automobile liability policy covered the loss claimed by the lessor, and that the insurer had wrongfully failed to protect its insured. The insurer answered that the automobile liability policy had lapsed due to nonpayment of premium as of October 18, 1969 and, therefore, no insurance was in effect at the time of the accident. Then the insurer filed a motion for summary judgment alleging that the automobile insurance policy was not in effect at the time of the accident. The insured filed a counter motion for summary judgment alleging that the exhibits attached to the insurer's motion for summary judgment showed that coverage under the insurance policy was in force, at least *ex gratia,* as of the time of the accident. The insurer filed an amended motion for summary judgment once against alleging that the policy was not in effect at the time of the accident, but also alleging that even if the coverage were in effect at the time of the accident, the insured's claim would still be denied because the automobile that is the subject matter of this lawsuit was a nonowned automobile, not the 1967 Volkswagen covered by his insurance policy.

■■ The purpose of summary judgment proceedings is to determine whether there is a genuine issue as to a material fact that would require a trial. (*Fountaine v. Hadlock* (1971), 132 Ill.App.2d 343, 346, 270 N.E.2d 222; *McVey v. Discher* (1970), 122 Ill.App.2d 408, 259 N.E.2d 300.) Judgment will be rendered if the pleadings, depositions, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. (Ill. Rev. Stat. 1971, ch. 110, par. 57(3).) The appellate court on review must determine if the pleadings raised a material fact. (*O'Brien v. Highland Lake Construction Co.* (1972), 9 Ill.App.3d 408, 413, 292 N.E.2d 205.) We have concluded, after reviewing the pleadings, that the trial court properly granted summary judgment.

The threshold question to be resolved is whether the trial court properly determined as a matter of law that insurance coverage was in effect. The appellant argues that unless the insured paid his premium the contract of insurance would be nonexistent. Furthermore, it contends that a review of his bank records revealed no evidence of payment. This may be so, however, we do not think that it is conclusive evidence of non-payment by the insured.

■■ In Illinois, the general rule is that where a question arises as to the legal construction to be placed upon the language of an insurance policy, it will be strictly construed in favor of the insured. (*Fisher ex rel. Kiniry v. Associated Underwriters, Inc.* (1938), 294 Ill.App. 315, 13 N.E.2d 809.) This rule of construction is particularly applicable in the instant case since the insurer claims a right of cancellation, but, as pointed out by our supreme court in *Budelman v. American Insurance Co.* (1921), 297 Ill. 222, 130 N.E. 513, courts will permit the insurer to cancel an insurance policy only where the insurance company demonstrates that it has a clear right of forfeiture.

In *Mitchell v. Burnett* (1971), 1 Ill.App.3d 24, 272 N.E.2d 393, this court was faced with the problem of determining whether the liability insurance policy issued by an insurer was cancelled for nonpayment of premium, when the insurer issued an avoid cancellation notice, and subsequently tendered a final notice of cancellation. The court held that a cancellation notice with an equivocal title, that is conciliatory in tone, and contains some contemplation of future action, is ineffective to cancel the policy. See *Burnett v. Illinois Agricultural Mutual Insurance Co.* (1943), 318 Ill.App. 629, 48 N.E.2d 559; *McNellis v. Aetna Insurance Co.* (1913), 176 Ill.App. 575.

In the case under review, the cancellation notice is ineffective because it violates the rules set forth in *Burnett*. The title of the cancellation notice in this case, "Avoid Lapse," is clearly equivocal. The notice contains the following language: "This policy is now in the grace period and it may lapse. A call may save the coverage." The language contained in the notice is hardly a positive and unequivocal cancellation of Noffsinger's insurance. The notice is conciliatory in tone and is an attempt by the insurer to secure reinstatement of the insured's policy. This language manifests an intent on the part of the insurer to cancel the policy in the future. Finally, as was the case in *Burnett*, the insurer took future action by tendering to the insured a "policy lapsed" or final cancellation notice after the avoid lapse notice. In our opinion, given the facts in this case and following the rule that the language of an insurance policy should be strictly construed against the insurer, the avoid lapse notice failed to

cancel the policy. Therefore, the insured was covered on November 17, 1969, the date of the accident.

■■ Since the insurance policy was in effect, we must now determine if the insured is barred from recovery by the "non-owned" exclusion contained in the policy as urged by the insurer. The policy defines a non-owned automobile as follows:

> "\* \* \* [A]n automobile not owned by or regularly or frequently used by the named insured or any resident of the same household, other than a substitute automobile."

In the case under review, Noffsinger had been driving the leased automobile for 2 days. The automobile was not regularly or frequently used and, therefore, it was not a nonowned automobile as defined by the policy. Consequently, the lessee is not barred from recovery by the nonowned exclusion contained in the policy.

The appellant cites *State Farm Mutual Automobile Insurance Co. v. Berke* (1970), 123 Ill.App.2d 455, 258 N.E.2d 838, as support for the proposition that insurance coverage is not extended to "nonowned" vehicles. This case can be easily distinguished. In *Berke,* the policy defined a nonowned automobile as follows: "'\* \* \* [F]urnished or available for the frequent or regular use of the named insured, \* \* \*.'" (123 Ill.App.2d 455, 456.) In the instant case, the definition of a nonowned automobile does not contain the phrase "furnished or available." Therefore, given the two different definitions, the court could arrive at different results.

For the foregoing reasons, the decision of the trial court is affirmed, since summary judgment was properly entered in this case.

Affirmed.

DIERINGER, P. J., concurs.

Mr. JUSTICE BURMAN, dissenting:

It is undisputed that the policy in question was to expire on October 18, 1969. It provides that the company "agrees with the insured \* \* \* in consideration of the payment of the premium \* \* \*." It further provides:

> "The entire policy shall automatically and immediately lapse and become void without notice upon the expiration date of any current term if the named insured defaults in making payment of the premium herein provided for."

The majority points out that Noffsinger was told by a woman in the offices of the insurer's agent in Omaha, during the week of October 18, 1969, not to pay the premium but to wait for another premium notice.

In the same deposition where Noffsinger made that representation he also stated that he later received a correct premium in the mail about November 1, 1969, and mailed back payment with a check drawn on the Omaha National Bank. In his third-party complaint he similarly alleged compliance with all premium payments which were due on his policy for it to be effective on November 17, 1969, when he was involved in the accident with the leased automobile. The records of the Omaha National Bank, however, produced by Farmers Insurance Group, conclusively show that he did not draw a check in payment of the premium.

On or about September 26, 1969, Noffsinger received a renewal notice that his policy was close to ending and that a premium in the amount of $358.85 was due to be paid before October 18, 1969. On or about October 29, 1969, Noffsinger received an "Avoid Lapse" notice when payment was not received which stated that the renewal date was October 18, 1969, that $358.85 was due, and that "[t]his policy is now in the grace period and it may lapse. A call may save this coverage." In addition, however, an affidavit of a Farmers Insurance executive indicates that a further "Lapse Notice" was given at that time with an indication in bold type that:

> "Although the renewal date has passed you can still void the lapse of your policy. Payment within 15 days after due date will renew your policy without interruption of coverage. Otherwise your insurance will remain lapsed as of the due date."

Thus, there is evidence that about October 29, 1969, Noffsinger had again duly received notice from the company that the renewal date had passed, but that if he paid the past due premium within 15 days from the due date (which would have been November 2, 1969, well before the accident occurred) he could still void the lapse of the policy. Otherwise the policy would remain lapsed as of the due date, October 18. There is no showing of any payment.

In my view, it appears that Noffsinger was not entitled to coverage simply because he failed to pay the premium, although he had ample, emphatic notice that it was due. At the time of the accident on November 17, 1969, it appears that Noffsinger had not called the company, nor paid the premium, and had thus allowed the policy to lapse and become void.

Considering the documents in the record, and notwithstanding *Mitchell v. Burnett,* 1 Ill.App.3d 24, 272 N.E.2d 393, I find that the notice received was not so uncertain, equivocal, and conciliatory as to extend coverage at the time of the accident. In *Mitchell,* the original policy issued was to be effective until August 8, 1965. Prior to that date, on April 10, 1965, an "Avoid Cancellation" notice containing a cancellation date of April 25,

1965, was sent to the insured due to premium non-payment. The accident occurred on May 7. The court thus dealt with whether an existing policy could be cancelled before the date stipulated in the original contract by means of a notice which indicated for the first time an earlier date of termination. Furthermore, there was no language contained in the "Avoid Cancellation" notice in *Mitchell* that would avert the connotation that the company contemplated future action to cancel the policy. In the instant case Noffsinger was aware of the lapse date of October 18 under the terms of the policy before he received the "Avoid Lapse" notice. At the very least a notice received by him on September 26 prior to receipt of the "Avoid Lapse" notice contained that date. Furthermore the language of the notice in question here is not as indicative of the need for future action as the notice in *Mitchell*. There is evidence that the "Avoid Lapse" notice was sent with an additional notice, in block letters, that Noffsinger could "void the lapse" by payment within 15 days and thus "renew" the policy, or otherwise the insurance would "remain lapsed" as of the due date. Such language does not connote the need for future action to terminate coverage.

I am also of the opinion that the trial judge was incorrect in finding, based on the record before us, that the vehicle under lease was not a "non-owned automobile" "regularly or frequently used" by Noffsinger so as to fall outside the purview of the coverage. Although Noffsinger had possession of the car for only a few days before the accident, he had leased it for a term of 24 months. He executed that lease a full 2 months before he was involved in the accident. He never disputed that the leased automobile was meant for his frequent and regular use, and all indications are to the contrary. He in fact testified in a deposition that the car was leased "for [his] sole and exclusive use." In *State Farm Mutual Automobile Insurance Co. v. Berke* 123 Ill.App.2d 455, 258 N.E.2d 838, the trial court concluded and the appellate court affirmed that an auto leased by Doctor Berke was not covered by his policy as a nonowned auto since it was furnished for his regular use and was also available for use by his wife, who was involved in an accident with it. Despite some difference in the language of the policy involved in that case, I find the gravamen of the opinion supportive of my view in the instant case.

Furthermore, as the insured himself states in his brief, under the 24-month-long lease, with an option to purchase, the insured may have been considered pro facto owner of the automobile. In that event, it appears that the auto would have to meet the conditions contained in the policy under the "Newly Acquired" automobile category to have coverage extended to it. In that regard, if the leased auto was an "additional" newly acquired automobile, I find no proof that the company "insures all auto-

346

mobiles owned by the named insured on the date of such acquisition" as is required under the terms of the policy for coverage to be extended. Moreover there is no proof that the leased auto "replaced" the Volkswagen described in the policy, an alternative condition that must be met in order for it to fall within the "Newly Acquired" characterization. In fact, Noffsinger testified in a deposition that he leased the car for his sole and exclusive use, and that at the time of his testimony he still owned the Volkswagen.

For the above reasons, I am of the opinion that the summary judgment of the trial court, in which the insurer was ordered to defend Noffsinger and to pay fees to his attorneys, should be reversed.