BYRON M. GETZOFF *et al.*, Plaintiffs-Appellants, *v.* FRANK PARIS *et al.*, Defendants and Counterplaintiffs-Appellees and Cross-Appellants.—(BYRON M. GETZOFF *et al.*, Counterdefendants and Cross-Appellees.)

First District (1st Division)    No. 77-1093

Opinion filed September 24, 1979.—Supplemental opinion filed on denial of rehearing November 13, 1979.

Herbert I. Rothbart, of Chicago, for appellants.

Frank Cicero, Jr., Roger L. Taylor, and Joel F. Handler, all of Kirkland & Ellis, of Chicago, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This appeal stems from an order of the circuit court of Cook County dismissing the plaintiffs' amended complaint and the defendants' amended counterclaim and further ordering that the $46,794.92 paid by the defendants to the plaintiffs by order of court during the pendency of the suit, should be retained by plaintiffs. Both parties filed notices of appeal. Four main issues are raised on appeal: (1) whether the trial court's dismissal of the plaintiffs' action for an accounting was against the manifest weight of the evidence; (2) whether the trial court's dismissal of the defendants' amended counterclaim was against the manifest weight

of the evidence; (3) whether the trial court's award to the plaintiffs was improper in light of its dismissal of the plaintiffs' amended complaint; and (4) whether the trial court erred in failing to issue a contempt citation against the defendants for disregarding various orders of the court.

For the reasons set forth below, we reverse and remand.

This controversy centers around the parties' nine-year business relationship. The plaintiffs in this case are Byron Getzoff, an attorney and licensed insurance broker, and two Illinois corporations solely owned and operated by Getzoff, Product Liability Insurance Agency, Inc. (hereinafter PLIA), and Ladder Products Insurance Agency, Inc. (hereinafter LPIA). The defendants are Paris, O'Day & Reed, Inc., an Illinois corporation, licensed as a general insurance agency (hereinafter Paris-O'Day), and Frank Paris, an insurance broker employed by that corporation, who also serves as one of its officers. The plaintiffs filed an action for an accounting against Paris-O'Day and Frank Paris, individually, for commissions received by defendants from July 1, 1965, until September 16, 1976. The plaintiffs alleged that an oral agreement existed between Getzoff and Paris whereby Getzoff would act as producing agent and Paris as general agent in a liability insurance program for members of the American Ladder Institute (hereinafter ALI).[1] In return for his services in this venture, Getzoff was to receive two-thirds of the commissions received by Paris-O'Day from the insurance carrier. The accounting was sought, the amended complaint alleged, because Getzoff suspected the defendants of withholding the agreed upon percentage of the total commissions. The plaintiffs further alleged that the equitable remedy of accounting was necessary because no remedy existed at law to substantiate the claim. In addition to the accounting, the plaintiffs sought an award of all monies due incident to the oral agreement between the parties, the commissions due for September 1976, and an order requiring the defendants to retain all documents relative to the matters raised by the plaintiffs' complaint and to deposit with the clerk of the court all gross commissions received from the insurance carrier, Crum & Forster Insurance Company (hereinafter Crum & Forster), pending the outcome of the accounting.

The defendants denied the plaintiffs' allegations and filed a multicount counterclaim seeking damages for the plaintiffs' tortious interference with Crum & Forster, the ALI program's insurer, and with the members of the insurance program. The defendants-counterplaintiffs also sought injunctive relief to enjoin the plaintiffs-counterdefendants from committing certain acts in the future which the defendants felt

---

[1] The American Ladder Institute is a national trade association comprised of ladder manufacturers located within the United States.

would be detrimental to their continuation of the ALI insurance program and in particular its business relationship with Crum & Forster and the ALI membership.

In order to understand the parties' contentions on appeal, it is necessary to review a series of motions filed by the parties. On September 24, 1976, shortly after filing the suit, the plaintiffs sought and obtained a temporary restraining order restricting Paris-O'Day from collecting premiums from any of the ladder manufacturers during the pendency of this suit. In October, the court directed Paris-O'Day to pay the October premiums to the insurance carrier from the monies collected from the ladder manufacturers and then to pay Getzoff his regular commission. On November 19, 1976, upon being advised by the plaintiffs that defendants had not paid any commissions to the plaintiffs for September and November and pursuant to motions by both parties for a preliminary injunction, the court ruled that all monies obtained from the ladder companies, exclusive of the net premiums, were to be deposited in a special account to be established by the parties. Disbursement from this account would be conditioned upon an order by the court. However, this order was modified by the court on November 29, 1976, when Paris-O'Day advised the court of the great hardship its office would suffer if the November 19, 1976, order was allowed to remain in effect. Under the modified order, Paris-O'Day would (1) pay to the plaintiffs $12,124 per month as their commission on the ladder account including the months of September and November; (2) retain from the total amount of commissions paid to them from Crum & Forster an amount necessary to pay for operating expenses; and (3) pay the balance of the commissions into the special account set up pursuant to the November 19, 1976, order of the court. This order remained in effect until the judgment order was entered on May 23, 1977. In addition to the aforementioned motions, the plaintiffs also filed three motions for sanctions against the defendants for violating the court's orders of September 24, 1976, November 19, 1976, November 29, 1976, December 9, 1976, December 13, 1976, and December 14, 1976.

On May 23, 1977, the court entered a final decree reflecting the court's oral order of April 20, 1977, concerning both the procedural and the substantive issues raised by the parties. The order stated that:

"This cause having come on for trial upon the amended complaint of plaintiffs, the amended verified answer of the defendants thereto, the amended counterclaim of defendants, defendant's motion for summary judgment, plaintiff's answer to the motion for summary judgment, plaintiff's motion for a finding of violation of a temporary restraining order, plaintiff's motion for a finding of violation of the order of court dated November 29, 1976,

defendants' motion for an order awarding expenses and attorneys' fees for plaintiff's failure to attend and proceed with depositions, defendant's motion for a preliminary injunction, and plaintiff's motion for a preliminary injunction;

This Court having reviewed the pleadings heard the oral testimony of witnesses sworn and examined in open court, and having examined the documentary and written evidence taken and filed, and having heard argument of counsel for both plaintiffs and defendants, and being fully advised in the premises finds:

1. That this Court has jurisdiction over the parties hereto and the subject matter hereof;

2. That the material allegations of the amended complaint, including the alleged agreement between plaintiffs and defendants herein have not been proven. The amended complaint should be dismissed.

3. That all the material allegations of defendants' counterclaim herein have not been proven and the amended counterclaim should be dismissed.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That the amended complaint of plaintiffs herein be dismissed and the same is hereby dismissed;

2. That the amended counterclaim of defendants herein be dismissed, and the same is hereby dismissed;

3. Under the order of Court dated November 29, 1976, the $46,794.92 paid to Byron M. Getzoff by defendants is Mr. Getzoff's;

4. Both sides shall bear their own costs of this proceeding."

At the trial,[2] while the parties agreed that an oral agreement existed between them concerning the ALI insurance program, the testimony was in conflict regarding the nature of the agreement and the amount of compensation to be received under the agreement. Getzoff testified that in 1952, as chief counsel for the ALI, he developed a products liability insurance program for the ALI membership to help them combat rising insurance costs. Under that program, he received two-thirds of the commissions received from the insurer while the general agent received one-third of the commissions. This formula of compensation, he explained, was utilized with all three general agents who worked with the insurance program from 1952-1967. He testified that during this program he was retained as supervising claims attorney by the Lackawanna Casualty Company but that he was separately compensated for these services.

---

[2] The parties stipulated that the trial record would incorporate the evidence introduced at the hearing on the preliminary injunction.

Getzoff further testified that, in 1967, he approached Paris and reached an agreement with him to develop a comprehensive insurance program for the ALI in order to keep down the member's escalating insurance costs. The comprehensive program was to differ from the former ALI insurance program in that it would incorporate all of a particular member's liability insurance under one insurer. Getzoff would act as producing agent for the insurance program, and Paris would act as the general agent. Getzoff was to secure the participation of the ALI membership and Paris would secure an insurer. Getzoff testified that he formed the same two-thirds/one-third agreement with Paris that he had formed with the general agents in the earlier program and introduced into evidence a number of checks from Paris-O'Day reflecting his share of the commissions. Getzoff testified that under the agreement he was not required to conduct legal work for the insurer and that he received commissions on all of the insurance lines even though he only handled product liability defense work for the insurer. Getzoff further testified that he only offered to perform legal work for the insurer as a marketing device to encourage the ladder manufacturers to join the program. He also explained that his checks were marked with the notation, "for professional services," to prevent the insurer from realizing Getzoff's dual role in the program as Paris had informed him that this might jeopardize the program. Getzoff testified that he took a very active role in the insurance program and that when the program began in 1967, his company, LPIA, billed and collected the premiums from the ladder manufacturers, distributed the commissions, and dealt with the members on a day to day basis. This continued, he explained, until July 1975, when his legal work began to consume so much of his time that he asked Paris to take over the billing function.

Getzoff testified that his relationship with Paris had been good and that the insurance program operated smoothly until, in 1976, he began to suspect that Paris had replaced the Kemper Insurance Company, the original insurer, with Crum & Forster Insurance Company in order to receive higher commissions for himself and Paris-O'Day. To confirm this suspicion he asked Paris for an audit in July 1976. When this request was refused, he solicited broker of record letters from the ALI membership so that he could go directly to Crum & Forster and obtain a clarification of the commissions they were paying on the account. When Crum & Forster refused to deal directly with Getzoff because he was not an agent of theirs, although he was designated by 22 of the 26 ladder manufacturers as broker of record, Getzoff filed the present suit.

Lewis Berger, a past president of the ALI and president of the Louisville Ladder Company, testified for the plaintiffs. He stated that he joined the ALI insurance program because he knew of Getzoff's expertise

in handling ladder claims and wanted this expertise for his claims. He also testified that he never had any communication with Paris or his company concerning the insurance program and that, in fact, he had never met Paris before. He testified that he met Getzoff when his company joined the association in 1967 and that at that time Getzoff was the chairman of the insurance program as well as chief counsel for the ALI. After joining the insurance program he testified that he was billed by LPIA, Getzoff's company, and paid his premiums to Getzoff through that company. He also testified that he applied to Getzoff when he wanted to join the program, received his policy from him, and consulted with him regarding any questions he had concerning his insurance coverage.

Paris testified that he is an insurance broker employed by Paris, O'Day and Reed, Incorporated, a licensed insurance agent and that in 1967 Byron Getzoff, chief counsel for the ALI, approached him about developing a comprehensive insurance program for the ALI membership. After studying the feasibility of such a program, he developed the program and arranged for Kemper to insure the program. Paris further testified that during the development of the program, he and Getzoff reached an agreement whereby he would help Getzoff get retained by Kemper to conduct the products liability defense work for the ALI membership and would supplement Getzoff's legal fees with a percentage of the premiums received from the ladder manufacturers, and Getzoff would charge Kemper less than his regular legal fees for his services. The supplemental fee to Getzoff, Paris explained, was contingent upon Getzoff's performance of legal services to Kemper. Paris testified that when Crum & Forster took over as insurer for the ALI insurance program Getzoff was similarly retained as defense counsel and that his agreement with Getzoff remained the same. Paris testified that he paid Getzoff the agreed-upon percentages of the premiums until Getzoff terminated their agreement in September 1976. The termination in their relationship came about, Paris explained, because Getzoff became disgruntled with the program when he received a lower percentage of the commissions on three new accounts.

Richard Willing, past general manager of Novi Maintenance, Incorporated, testified for the defendants that when his firm desired insurance to cover their ladder repair business, he was referred to Byron Getzoff; however, upon contacting him he was informed by Getzoff that he was an attorney, not an insurance agent, and that if he needed such coverage it could be obtained through Paris-O'Day. Kemper's Ralph Hubbard also testified for the defendants. He stated that as a field supervisor for Kemper he worked with Paris in placing the insurance program with Kemper. He testified that he had no dealings with Getzoff and that Paris, not Getzoff, was the producing agent for the program.

Initially, we should note that, although the plaintiffs' amended complaint sought an accounting covering the period from July 1, 1965, through September 16, 1976, the plaintiffs admitted at oral arguments that there was no violation of the oral agreement until 1973 when Crum & Forster took over as the insurer for the program. Therefore, any accounting which would be available to the plaintiffs would cover only the 1973-1976 period.

■■ ■ In this appeal we are asked to review the propriety of the trial court's order dismissing the amended complaint and amended counterclaim and awarding the plaintiffs four months commission in the amount of $46,794.72. It is well recognized that a judgment will not be disturbed on review absent a finding that it is against the manifest weight of the evidence. (*Crawford v. Anagnostopoulos* (1979), 69 Ill. App. 3d 954, 387 N.E.2d 1064; *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 359 N.E.2d 1078; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42.) "This is particularly true in close cases where the findings must have been dictated to a large extent by the impressions of credibility received by the trial court from the observation of witnesses." (*Hunter v. DeMay* (1970), 124 Ill. App. 2d 429, 435, 259 N.E.2d 291.) A judgment is sufficient and not against the manifest weight of the evidence as long as it is supported by the evidence. (*National Boulevard Bank v. City of Chicago* (1970), 123 Ill. App. 2d 166, 259 N.E.2d 862; *Hanaman v. Davis* (1959), 20 Ill. App. 2d 111, 155 N.E.2d 344.) Moreover, a judgment so supported will not be disturbed on review because the trial court fails to state the basis for the decision or to make findings of fact or conclusions of law (Ill. Rev. Stat. 1975, ch. 110, par. 366(b)(3)(1); *Inter-Insurance Exchange v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518), or states an erroneous basis for the decision. *Keck v. Keck* (1974), 56 Ill. 2d 508, 309 N.E.2d 217; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42; *Shibata v. City of Naperville* (1971), 1 Ill. App. 3d 402, 273 N.E.2d 690.

■■ While, under these principles, the trial court's dismissal of the complaint and the counterclaim might have been proper, we are unable to rationalize those findings with the award made to the plaintiff. The trial court had a difficult choice to make in evaluating the evidence; however, it did not make any findings of fact regarding the award nor state any findings concerning the dismissal of the plaintiffs' amended complaint which would allow this court to evaluate whether the award was proper. (For a similar case in which an award was unexplained, see *Hanaman v. Davis* (circuit court reversed on other grounds).) Moreover, the trial court's statements made in rendering its oral decision on this case offer little in the way of clarification. The trial court, in ruling that the plaintiffs should keep the money given to them as commissions by the defendants during the pendency of the suit, merely stated:

"And so far as that money is concerned, the money has been paid. They have been operating in this way. And that's it for 1976. The money is Mr. Getzoff's, that money has been paid."

In dismissing the plaintiffs' amended complaint, the court stated:

"It seems that both parties are claiming credit for setting up this insurance program. However, it also seems clear to me that the program as it was setup was the work of the defendant. There was some action in there by Mr. Getzoff.

But there is no denying the fact that whatever was proposed at all times was proposed with Mr. Getzoff in mind, that he should represent the ladder company, the ladder institute, and any of the people that were involved in this insurance package. In order that they would be assured, those who were in the program, that they would be properly represented if any lawsuits were brought against any of the insurance companies that they represented, it seemed at all times a requirement that these insurance companies wanted Mr. Getzoff because of his expertise and his experience in these lines to represent them.

Frankly, the question of compensation was brought up, and the only thing we have on there is that which Mr. Getzoff says it was and that which Mr. Paris says it was. Under the circumstances, this Court cannot do other than to find the issues against the plaintiff and in favor of the defendant."

The trial court's statement concerning the plaintiffs' complaint clearly indicates that the court believed that Paris was generally responsible for the development of the insurance program, however, the statement is unclear as to whether the court believed Paris' version of the agreement. Accordingly, it is impossible to discern from the record whether the court dismissed the complaint because it found that (1) there was a valid oral contract between the parties under the terms testified to by one of the parties, but that it had not been breached; (2) whether any valid oral contract existed between the parties; or (3) whether the plaintiffs otherwise failed to meet their burden of proof.

■ If a valid agreement existed between the parties, under the defendants' view of the agreement which terminated in September 1976, as stipulated by the parties, and absent a showing that the defendants owed the plaintiffs for past commissions, the award to the plaintiffs would be improper. If, on the other hand, the agreement existed under the terms alleged by Getzoff, then Paris may be liable to Getzoff for commissions on the existing accounts and the trial court's payment of the commissions only through 1976 would appear to be improper. Finally, if no valid oral agreement existed or if the plaintiffs otherwise failed to meet their burden of proof, then no award would be proper. Accordingly, as the record

does not support nor explain the trial court's award to the plaintiffs and in light of the interrelatedness of the amended complaint and amended counterclaim, we find that fairness dictates that the parties should be afforded a new trial on both the amended complaint and the amended counterclaim.

■■ We turn now to the plaintiffs' argument that the trial court erred in failing to issue contempt citations against the defendants for violating the September 24, 1976, temporary restraining order and the November 29, 1976, preliminary injunction. Our review of the record reveals that the trial court never ruled on the plaintiffs' motions. After being filed, these motions were continued from time to time and were to be considered along with several other procedural matters in the trial on the merits. At that time, however, the trial court failed to rule on them. An issue raised in a motion which is never ruled upon by the trial court may not be reviewed on appeal. *Goodrich v. Sprague* (1941), 376 Ill. 80, 32 N.E.2d 897; *Trisko v. Vignola Furniture Co.* (1973), 12 Ill. App. 3d 1030, 299 N.E.2d 421.

For the aforesaid reasons the judgment of the circuit court of Cook County is reversed and the case remanded for a new trial.

Judgment reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs-appellants, Byron M. Getzoff, Ladder Products Insurance Agency, Inc., and Product Liability Insurance Company and defendants, Frank Paris and Paris, O'Day & Reed, Inc., have filed respective petitions for rehearing. We shall consider each petition separately.

Plaintiffs-appellants' petition urges this court to modify our opinion so that on remand it will not be construed as barring plaintiffs from seeking an accounting for commissions produced after September 16, 1976, on accounts secured by plaintiffs' efforts prior to that date. In our original opinion, we observed that, despite allegations to the contrary in the plaintiffs' amended complaint, the plaintiffs could not seek an accounting for the period from July 1, 1965, through July 1, 1973. We reached that conclusion because plaintiffs admitted at the trial that there was no violation of the oral agreement between the parties prior to July 1, 1973, when Crum and Forster Insurance Company assumed the position

of insurer for the ALI insurance program. We concluded, however, that an accounting could be sought from July 1, 1973, through September 16, 1976, to determine the total amount of commissions received by the defendants from the ALI account. The opinion was silent upon the availability of an accounting for the period subsequent to September 16, 1976. To eliminate any misunderstanding, we now note that on remand the trial court is not barred, if the evidence warrants, from determining that an accounting is necessary for that time period subsequent to July 1, 1973.

Our conclusion that the accounting was limited to the 1973-1976 period was premised on the language in the plaintiffs' amended complaint which sought an accounting "from July 1, 1965 to date" and on the fact that the trial court obtained jurisdiction over the distribution of the commissions due under the parties' oral agreement when the suit was filed. The plaintiffs' amended complaint sought in pertinent part:

"* * * (1) That defendants be ordered to deposit with the Clerk of the Court all gross commissions received from insurance carriers in the future pending the accounting hereof."

During the course of the litigation the trial court issued a variety of orders regarding the collection of premiums and the disbursement of commissions including the order of November 19, 1976, sequestering payments of commissions. These orders brought the issue of the proper distribution of the commissions due under the agreement directly under the control and jurisdiction of the trial court. Had the gross commissions been deposited with the court pursuant to that order, then an accounting of the commissions received on the ALI account would have been unnecessary as the court would have distributed the commissions in the proportions which it determined to be required from its interpretation of the parties' oral agreement. From our examination of the record and the order of November 29, 1976, it is apparent, however, that the parties and not the court had custody and control of the net premiums collected on the ALI account. In the light of this fact, we believe that an accounting may be sought for the period subsequent to the trial court's exercise of jurisdiction over the parties.

Defendants-appellees set forth several contentions upon which they base their petition for a rehearing of this appeal. The defendants' first contention is that our opinion erroneously allows the plaintiffs to retain the $46,794.92 award granted them by the trial court. Next, defendants assert that this court should not have ordered a new trial of the present matter, but rather, should have directed the original trial judge to clarify or reconsider his judgment and most particularly the award to plaintiffs in light of this court's ruling. Finally, the defendants contend that this court

has overlooked certain findings by the trial court which demonstrate that the dismissal of the amended complaint was justified and that the plaintiffs should have made restitution to the defendants of the amount of the award.

It was the purport of our opinion to restore the parties to the positions which they held prior to the judgment by the trial court. We took this position because we found it impossible to rationalize the trial court's dismissal of the plaintiffs' amended complaint with its $46,794.92 award to plaintiffs. While the defendants initially allege that, under our decision, the plaintiffs are allowed to retain the trial court's award, it is clear from their petition that defendants clearly understand that, by reversing the judgment of the circuit court and remanding this case for a new trial, we have reversed the circuit court's order of May 23, 1977, including the $46,794.92 award. We do not agree with the defendants that it was necessary for this court to order restitution by plaintiffs. Our opinion made no effort to deal with the award, but rather, left the matter open to the trial court to assume jurisdiction over any and all further action in this matter. Consequently, the trial court may modify or alter any inter-locutory order, if erroneous, and may enter any order or judgment consistent with the evidence as may be warranted in its final determination of this cause, including a restitution order. *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217.

We turn next to the defendants' suggestion that this court should have disposed of this case by remanding it to the circuit court of Cook County with instructions for that court to reassign the case to the original circuit court judge who tried the case. We decline to accept the defendant's suggestion and, therefore, find it unnecessary to comment on the final contentions raised by the defendants in their petition.

The petition for rehearing is accordingly denied.

GOLDBERG, P. J., and McGLOON, J., concur.