JAMES A. SMITH, Plaintiff-Appellee and Cross-Appellant, v. GEORGE L. RICHARD *et al.*, Defendants (Economy Fire & Casualty Company, Defendant-Appellee and Cross-Appellee; State Farm Mutual Automobile Insurance Company, Defendant-Appellant and Cross-Appellee).

Fourth District   No. 4—84—0297

Opinion filed July 10, 1985.

TRAPP, J., dissenting.

James V. Mancuso, Jr., of Decatur, for appellant.

Wayne L. Bickes, of Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur, for appellee James A. Smith.

Gary M. Peplow and David L. Requa, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee Economy Fire & Casualty Company.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On February 4, 1981, plaintiff, James A. Smith, filed suit in the circuit court of Macon County against defendant, George L. Richard, seeking to recover for personal injuries resulting from a multivehicle collision in which a truck driven by defendant was involved. At the time of the collision, Richard was driving a mail route pursuant to a transportation services subcontract with the United States Postal Service (Postal Service). Negligence was charged.

On April 23, 1982, a second amended complaint was filed which not only sought damages for personal injuries as aforesaid, but also sought a declaratory judgment against defendant, State Farm Mutual Automobile Insurance Company (State Farm), providing that a policy of liability insurance issued by State Farm to Richard covered Richard's liability to plaintiff arising from the collision. In the alternative, plaintiff sought a declaration against defendant, Economy Fire and Casualty Company (Economy), that the uninsured motorist provision of its policy issued to plaintiff covered plaintiff's damages arising from the collision.

A bench trial was held concerning plaintiff's request for declaratory judgment. On March 27, 1984, the court entered a judgment declaring that Richard's State Farm liability policy covered any tort liability of Richard to plaintiff arising from the collision. The court also declared that because of the coverage of the State Farm liability policy, the uninsured motorist's provision of the Economy policy did not impose any liability on Economy. The judgment contained a finding pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) making the judgment appealable. State Farm appeals. Plaintiff cross-appeals. We affirm.

On appeal, State Farm maintains that (1) the trial court erred in determining that if State Farm failed to notify the Postal Service of

the termination of Richard's insurance coverage with State Farm, the termination was ineffective as to members of the general public; (2) the trial court's finding that State Farm failed to provide that notice to the Postal Service was contrary to the manifest weight of the evidence; (3) the record does not contain sufficient evidence to support a finding that the particular vehicle operated by Richard at the time of the accident was covered under the terms of the State Farm liability insurance policy in question; and (4) the trial court erred in refusing to allow State Farm to introduce certain evidence.

The evidence presented at the hearing concerning plaintiff's request for declaratory judgment indicated that on September 8, 1978, Richard executed a transportation services subcontract with the Postal Service which was effective August 12, 1978, through June 30, 1981. This subcontract, a copy of which was introduced into evidence, provided that Richard was to deliver mail over a specified route between Springfield and Shelbyville and to maintain public liability insurance on the vehicle being used to drive the mail route in accordance with the insurance requirements of Postal Service Regulation 7407. This regulation provides in part:

"The maintenance of insurance coverage *** shall be a continuing obligation of the contract, and the lapse or termination of insurance coverage without replacement coverage being obtained shall be grounds for termination of the contractor's right to perform under the contract.

The contractor shall notify the contracting officer of any lapse in insurance coverage as far in advance of the beginning date of such lapse as possible."

The evidence further indicated that (1) on November 3, 1979, Richard obtained a public liability insurance contract from State Farm and paid a six-month premium; (2) on April 16, 1980, the liability coverage was increased by endorsement; and (3) prior to the end of the six-month policy period, State Farm extended the coverage of the policy beyond the original termination date.

Mike Reisinger, a State Farm insurance agent, testified that a certificate of insurance, prepared by the State Farm office in Bloomington on April 16, 1980, and countersigned by Reisinger on May 16, 1980, was sent to, and received by, the Postal Service Transportation Management Office in Hazelwood, Missouri. This certificate identified Richard's insured vehicle as a 1977 Mercedes van and indicated that his liability insurance coverage had been increased to $300,000 for the personal injuries of one individual.

This certificate further provided:

"This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy if issued with it. If issued at a later date the name, policy number and effective date must be shown.

\* \* \*

We have coverage in force as shown below for the named insured. If the coverage is changed or terminated we will give the interested party 10 days written notice. U S Postal Service, Trans Mgmt Office, PO Box 6, Hazelwood MO 63042

\* \* \*

This Certificate of Insurance neither affirmatively nor negatively amends, extends nor alters the coverage afforded by the described policy."

All the language of the certificate was part of a printed form, except the reference to the "U S Postal Service \*\*\*" which was typewritten in letters larger than the printed portion of the form. The context of the language of the certificate clearly indicates that the "interested party" was the Postal Service.

In the declaratory judgment, the trial court found that (1) State Farm cancelled its policy with Richard effective June 22, 1980, by mailing a notice of cancellation to Richard, but (2) State Farm, by failing to give 10 days' notice to the Postal Service as required by the certificate of insurance, did not effectively terminate its policy of insurance as far as members of the general public who might be injured by Richard were concerned. State Farm disagrees, contending that it needed only to notify Richard in order to effectively cancel all future obligations of the policy.

■ The evidence indisputably showed that by the terms of his Postal Service subcontract, Richard was required to give proof to the Postal Service that he had proper liability insurance and to notify the Postal Service of any lapse in that policy. The evidence was also undisputed that State Farm's agent was advised of Richard's need for this proof of coverage and that the certificate in question was issued for that reason. Under these circumstances, we conclude that the amount of premiums which Richard paid was consideration not only for the original policy of insurance, but also for the issuance of the certificate which stated that it was part of the policy. The premiums were also consideration for the promises, contained in the certificate, for State Farm to give notice of termination to the Postal Service. (But see *United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co.* (5th Cir. 1974), 505 F.2d 88.) In undertaking to give

the notice to the Postal Service, State Farm assumed an obligation that Richard also had by the terms of his Postal Service subcontract. While the Postal Service looked to Richard to inform them of his lack of liability insurance, performance by State Farm of its promise to give the notice would have provided the Postal Service with the information it needed to cancel Richard's subcontract and protect the public from the danger of an uninsured truck carrying United States mail on the highways.

■ Clearly, after a liability insurance carrier has accepted premiums and issued a policy of liability insurance, the failure of the insured to pay subsequent premiums does not absolve the insurer of the duty to give such notice to terminate the policy as the insurer is required to give by the statutes applicable or by the *terms of the policy*. The previous premiums are the consideration for the promise to give the notice of termination. Particularly, where as here, the rights of a person injured by the insured are involved, strict compliance by the insurer with the policy provisions in regard to termination are required in order to relieve the insurer of coverage for liability of the insured. (*Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172, 212 N.E.2d 263.) If State Farm did not give the Postal Service the cancellation notice required by the certificate, which was a part of the policy, State Farm did not absolve itself from liability that would otherwise have existed under the instant policy.

Placing a duty of giving notice upon State Farm is consistent with an established public policy of this State. An example of this public policy is evinced in section 7—315 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 7—315), which applies to individuals whose licenses have been revoked. That section requires that in order to obtain a restoration of driving privileges, an applicant must produce a certificate of an authorized insurance carrier (1) certifying the existence of a proper liability policy covering the applicant; and (2) containing an agreement by the insurer to give the Secretary of State 10 days prior written notice of any cancellation of the policy. As with section 7—315, the obvious purpose of the Postal Service regulation concerning insurance requirements and notice of cancellation is to give the public financial protection from the possible tort of uninsured drivers.

■ We consider next State Farm's assertion that any finding that it did not send notice of cancellation to the Postal Service is contrary to the manifest weight of the evidence. State Farm admits that the notice was not sent within 10 days as required by the certificate, but maintains that the evidence shows that it was sent approximately one

month prior to the August 20, 1980, collision.

The employees of the Postal Service Transportation Management Office in Hazelwood, Missouri, testified that (1) a file is maintained for each contractor and subcontractor; (2) a subcontractor's insurance documents are placed in that subcontractor's file; (3) Richard's file contained the certificate of insurance issued by State Farm; and (4) there is no indication in Richard's file that a cancellation notice was ever received from State Farm.

State Farm presented no evidence that (1) any particular third-party notice form was printed by the computer; (2) any alleged notice was ever put into an envelope; (3) any envelope was ever addressed to the Postal Service; or (4) any envelope addressed to the Postal Service was taken to a post office or delivered to the Postal Service. The only evidence presented by State Farm was that the number "1" which appeared in a particular box on a particular computer form signified to State Farm employees that a "notice" to third-parties (*e.g.*, the Postal Service) had been printed. However, the State Farm employees did not indicate in their testimony when the notice was printed or what type of notice was printed. The trial court's finding that no notice was given in accordance with the provisions of the certificate of insurance was not contrary to the manifest weight of the evidence.

■ State Farm next points out that (1) both the State Farm policy issued to Richard and the certificate of insurance issued to the Postal Service identified the insured vehicle as a 1977 Mercedes van; (2) plaintiff admits in his pleading that Richard was driving a 1½-ton 1973 International truck at the time of the accident; (3) the State Farm policy issued to Richard provided that "liability coverage extends to [an insured's] use *** of a newly acquired car *** [if the car] replaces [insured's] car *** but only if [insured or insured's spouse] *** tell us about it within 30 days after its delivery to [insured or insured's spouse.]"

State Farm argues that the vehicle operated by Richard at the time of the accident was not covered by the policy in question because there was insufficient evidence to show that Richard did tell State Farm "about it within 30 days after its delivery." State Farm also maintains that the trial court's failure to make a specific finding concerning this issue constitutes a reversible error. However, no finding of fact is necessary to support a judgment of this nature. See 87 Ill. 2d R. 366(b)(3)(i); *Getzoff v. Paris* (1979), 77 Ill. App. 3d 401, 396 N.E.2d 260.

The record clearly indicates that (1) due to certain acts of the les-

sor of the Mercedes van, Richard did not have access to that vehicle after the latter part of May 1980; (2) Richard called the office of Mike Reisinger, a State Farm insurance agent, on June 3, 1980, and Reisinger's secretary placed a note concerning the telephone conversation in Richard's file; (3) this note stated "Mr. Richard intends to replace this veh. [*sic*] with another today. Will let us know."; (4) Richard went to Minnesota and purchased the International truck on June 19, 1980; and (5) the accident with plaintiff occurred on August 20, 1980.

Reisinger testified that he might have had a conversation with Richard after the date of the conversation evinced by the June 3, 1980, note, but did not think that any such conversation took place. Richard testified that (1) shortly before obtaining the International truck, he informed Reisinger that he was purchasing the truck and wanted State Farm to insure it; and (2) Reisinger answered, saying, "[n]o problem." However, on cross-examination, Richard stated that he would not swear this was so but thought that it was. Richard was impeached by prior deposition testimony in which he had stated that he had not talked to Reisinger after the June 3, 1980, conversation, and that on the day of the collision he intended to call Reisinger and tell him about the International truck, but did not do so. At the hearing, Richard testified that the deposition testimony was not accurate, but did not say why he had so testified at the deposition.

Despite the impeached nature of Richard's testimony, we do not find the trial court's conclusion, inherent in its decision, that State Farm had notice of the substitution of vehicles and its agent had bound it to cover the International truck, to be contrary to the manifest weight of the evidence. Reisinger unquestionably had notice of Richard's intent to obtain another vehicle. The court could have concluded that he would have been likely to check with Richard if Richard had not contacted him. The trial court heard and observed the witnesses. As Richard did say that he believed he informed Reisinger of the substitution of vehicles, we cannot properly reject the trial court's appraisal of the testimony.

■ State Farm also maintains that the trial court erred in refusing to allow it to introduce evidence concerning Richard's failure to notify State Farm of this lawsuit as required by the terms of the policy. State Farm submits that it suffered prejudice as a result of Richard's failure to give notice of the suit because it was unable to properly investigate the circumstances of the case.

Where an insurer fails to plead lack of notice by an insured, such lack of notice is not at issue and is, therefore, waived. (*Bergmann v.*

*Multi-State Inter-Insurance Exchange* (1963), 39 Ill. App. 2d 468, 189 N.E.2d 49.) Here, State Farm did not raise this issue in its pleadings. Accordingly, the trial court did not err in refusing to allow State Farm to introduce evidence of Richard's failure to give notice.

■ Finally, State Farm requests that if we uphold the trial court's determination that it has liability under its policy, we limit the liability to $10,000 which was the minimum amount required by Postal Service regulation for bodily injury to a single individual. We recognize that such a ruling would have some consistency with the public policy involved. However, as we have determined that a failure to give proper cancellation notice to the Postal Service kept the full policy in force, we do not deem it appropriate to reduce the liability below the stated limits of the policy.

In his cross-appeal, plaintiff submits that if this court were to determine that State Farm owed no duty to provide liability insurance coverage to Richard in this case, then the court should also determine that plaintiff is entitled to uninsured motorist's coverage under the policy issued to him by Economy. Because of our decision that State Farm owes a duty to provide insurance coverage in this case, we need not grant the relief requested by the cross-appeal.

For the reasons stated herein, we affirm.

Affirmed.

MILLS, J., concurs.

JUSTICE TRAPP, dissenting:

I dissent because of a strong conclusion that the majority opinion disregards critical factors in evidence relating to the contractual liability of appellant.

The opinion takes as an energizing premise that the premium paid was consideration for the issuance for the certificate of insurance. The date of plaintiff's injury was August 20, 1980. The finding of the trial court, that Richard was notified of cancellation of his insurance policy on June 22, 1980, is not an issue.

The record shows that the reason for cancellation was nonpayment of premium. I cannot believe that nonpayment of premium may be transmogrified into consideration for liability coverage. The opinion cites *Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172, 212 N.E.2d 263, as supporting authority. That opinion, however, involves a wholly different relationship in that it was admitted that no notice of cancellation of the policy was sent to the insured until after the collision causing plaintiff's injury.

The record is clear that by the endorsement of the policy, G & C Trucking Company, the contractor for the mail route, was an additional insured. Richard was a subcontractor under G & C. The postal service was not treated as an additional insured.

The evidence deposition of Kenneth Wankoski, Manager, Transportation Management Office of the United States Postal Service, emphasizes that there were, and now are, no postal regulations concerning contracts for transporting mail that require that an insurance company notify the postal service of a cancellation of the liability insurance of a contractor. Rather the requirements for notice of cancellation of the insurance of a contractor are placed upon the contractor. Wankoski testified that while evidence of insurance is required of the contractor, all such insurance transactions are conducted directly with the contractor. He stated that insurance companies do not issue notice of changes in policy to the postal service and, in effect, that the postal service does not expect to deal with, or rely upon, the issuance of notice of such changes by the insurer.

The net result of this opinion is to create a contractual duty which no party contemplated or agreed to, for which no consideration was paid, and which liability might continue as long as Richard managed to retain a subcontract for the transportation of mail. I would reverse the judgment of the trial court.