NO. 4-01-0807

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

RONALD J. YACKO,  ) Appeal from

Plaintiff-Counterdefendant-  ) Circuit Court of

Appellee,       ) McLean County

v.  ) No. 99L85

BRADLEY R. CURTIS,  ) 

Defendant-Counterplaintiff-  ) 

Appellant,  ) 

and  ) 

BRADLEY R. CURTIS,  )

Third-Party Plaintiff-Appellant,)

  )

ANTHEM CASUALTY INSURANCE COMPANY,  )

n/k/a SHELBY CASUALTY INSURANCE COMPANY,  )

an Insurance Company Licensed in the  )  Honorable

State of Illinois,  )  Elizabeth A. Robb,

Third-Party Defendant-Appellee. )  Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Third-party plaintiff, Bradley R. Curtis, appeals the entry of summary judgment by the circuit court of McLean County on his claims against third-party defendant, Anthem Casualty Insurance Company (Anthem).  We affirm.

I. BACKGROUND

On December 6, 1996, Affirmative Insurance Company (Affirmative), a subsidiary of Anthem, issued Curtis an automobile policy for one year.  Premiums were due each month, and Curtis often paid premiums in cash at the office of Terry Woith and Associates, his independent agent.  During the policy period, ­Curtis received three cancellation notices that were followed by reinstatement notices.  For example, on February 14, 1997, a cancellation notice was sent to Curtis, while on February 20, a reinstatement of coverage was issued.  

In addition, on June 2, 1997, Anthem sent Curtis another cancellation noti­ce, stating Anthem would cancel the policy if payment was not received by June 20, 1997.  In mid-July, Anthem received a check for $155 from Curtis.  Curtis­'s credit union dishonored the check for insufficient funds.  Later, Curtis sent a payment of $63.82 to Anthem by check dated August 3, 1997.  Anthem cashed the check in mid-August.  The policy was reinstated by notice dated August 15, 1997, effective August 27, 1997.

On August 18, 1997, Anthem sent a cancellation notice not followed by a reinstatement notice.  This notice indicated if the premium due on or before August 31, 1997, was not timely received, the policy would be canceled:

"As you know, you have a premium due 08/31/97. ***

***

If this payment is not received by us before 08/31/97, then this notice will serve as a notice of cancellation for non[]payment of premium effective 08/31/97, at 12:01 a.m. standard time."

Also sent to Curtis on that date was a statement indicating a payment of $229.09 was due on or before August 31, 1997.  Anthem did not receive this payment or any payment after the August 3, 1997, check for $63.82 sent by Curtis.

Anthem established by affidavit that it sent Curtis on September 19, 1997, a collection notice for $106.81, the premium due for the period of early August 1997 through August 31, 1997.  The September 19, 1997, notice states as follows:  "Recently, your policy with our company was canceled.  Prior to that cancellation, there was a balance due for insurance protection you have already received.  The premium due is $106.81."  In his deposition, Curtis admitted receiving this notice.  

On October 17, 1997, Curtis was in an automobile accident that allegedly resulted in damages to Ronald J. Yacko.  When Curtis inquired about coverage under the policy, Anthem responded the policy was canceled and Curtis was not covered on October 17, 1997.

On June 22, 1999, Yacko filed suit, alleging a claim of negligence against Curtis.  Later, on December 1, 2000, Curtis filed an amended third-party complaint against Anthem.  Curtis claimed Anthem improperly denied his claim and failed to provide coverage and representation.  

By motion dated July 23, 2001, Anthem moved for summary judgment on Curtis's claim.  Anthem maintained the policy by Curtis had been canceled due to nonpayment of premium and thus Curtis was not covered on the date of the collision with Yacko. Curtis claimed he was covered by the policy.  Curt­is presented testimony from Terry Woith, the insurance agent who worked with Curtis.  Woith, who worked in the insurance industry since 1988, testified she believed the policy was in effect on October 17, 1997, and the August 18, 1997, cancellation notice could be discarded because the August 15, 1997, reinstatement stated the reinstatement was effective August 27, 1997.  Woith testified she received no other notices regarding Curtis's policy after August 27, 1997. 

The circuit court agreed with Anthem and granted Anthem's motion after finding "Anthem has established the requisite cancellation notices were mailed according to law."

Curtis appeals.

II. ANALYSIS

We review the grant of summary judgment 
de
 
novo
.  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390, 620 N.E.2d 1073, 1077 (1993).  On summary judgment, we view all evidence in the light most favorable to the nonmovan­t.  
Boldini v. Owens Corning
, 318 Ill. App. 3d 1167, 1170, 744 N.E.2d 370, 372 (2001).  Summary judgment is inappropriate if a material question of fact exists.  It is proper, however, "when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."  
Boldini
, 318 Ill. App. 3d at 1169-70, 744 N.E.2d at 372, 
citing 735 ILCS 5/2-1005(c) (West 1998). 

Curtis does not dispute the facts or contend a material issue of fact exists.  Instead, Curtis argues two theories on appeal.  First, Curtis contends the policy was in effect and in full force when the collision with Yacko occurred.  Curtis contends "[b]ased on the history between the parties it would be very reasonable to interpret the actions of [Anthem] between August 15 and August 18, 1997[,] as having reinstated the policy and thereby voiding the effect of the August 18, 1997[,] notice of cancellation."  Curtis maintains the reinstatement as of August 27, 1997, "superceded the cancellation date of August 18, 1997," and it was reasonable to believe the cancellation notice and his check crossed in the mail.  Curtis then contends while viewing all evidence in the light most favorable to him, the policy was in effect on October 17, 1997.  

In response, Anthem maintains the policy was properly canceled for nonpayment of premium.  Anthem maintains despite both the August 18, 1997, and September 19, 1997, cancellation notices, Curtis made no payment after the $68.82 check in August 3, 1997.  Anthem states Curtis's contention the reinstatement following receipt of the $68.82 check rendered the August 18 cancellation notice irrelevant is incredible given the August 18, 1997, notice states an amount three times greater than the $68.32 paid.

While we must view evidence in the light most favorable to a nonmovant, we cannot simply ignore evidence unfavorable to the nonmovant.  The August 18 cancellation notice and statement indicated Curtis must pay $229.09 before August 31, 1997.  Curtis paid $68.82.  Even if Curtis believed the $68.82 went toward the August 31, 1997, payment, it is still far short of the amount required by the cancellation notice.  Curtis was clearly told "if [$229.09] is not received by us before 08/31/97, then this notice will serve as a notice of cancellation for nonpayment of premium effective 08/31/97, at 12:01 a.m. standard time."  

Kujbida v. Horizon Insurance Agency, Inc.
, 260 Ill. App. 3d 1001, 1008-09, 632 N.E.2d 151, 156 (1994), relied upon by Curtis, does not hold otherwise.  
Kujbida
 states before a cancellation under Illinois law is valid, notice must provide unambiguously sufficient information to determine whether the reason is valid, so the insured may either contest the cancellation or correct the defect.  See 
Kujbida
, 260 Ill. App. 3d at 1008-09, 632 N.E.2d at 156.  Here, because the notice was clear and unambiguous, 
Kujbida
 does not help Curtis.  

Curtis next argues Anthem's conduct in providing three notices of cancellation and then reinstatement "constitute[s] at the very minimum a waiver of strict compliance with the policy."  Curtis cites two cases in support:  
Western Casualty & Surety Co. v. Brochu
, 105 Ill. 2d 486, 475 N.E.2d 872 (1985), and 
Insurance Co. of Illinois v. Brown
, 315 Ill. App. 3d 1168, 734 N.E.2d 964 (2000).
  

Anthem, on the other hand, contends it acted within the law.  Anthem points to secti­on 143.15 of the Illinois Insurance Code, which permits an insurer to cancel a policy for nonpayment, so long as notice of cancellation is mailed 10 days before cancellation is effective.  215 ILCS 5/143.15 (West 1996).  Anthem also contends both 
Brochu
 and 
Brown
 are factually inapposit­e. 

 We agree with Anthem; neither 
Brochu
 nor 
Brown
 supports Curtis’s contentions.­  In 
Brochu
, the Supreme Court of Illinois found no waiver, when the insurer expressly reserved its right to deny coverage if necessary at a later date.  
Brochu
, 105 Ill. 2d at 499, 475 N.E.2d at 878-79.  In 
Brown
, the First District found the insurer waived its right to enforce a cancellation provision when the insurer accepted a premium but did not refund the amount applica­ble to the relevant date.  
Brown
, 315 Ill. App. 3d at 1175, 734 N.E.2d at 969.  At best, these cases can be said to show 
waiver may arise if an insurer intentionally relinquishes a known right.  Here, the facts, taken in the light most favorable to Curtis, reveal Anthem did not intentionally relinquish its rights, but instead intentionally invoked its statutory right to cancel the policy when the premium was not paid.  ­Curtis has provided no authority to prove otherwise.

The dissent raises points not argued by either party.  The dissent contends the cancellation notice was insufficient because it (1) was sent before the insured failed to pay his premium and (2) was conciliatory in tone.

Neither of these points may be resolved simply by looking at the face of section 143.15, the rest of the statute, or earlier holdings.  Arguments based on these points raise legal and policy questions best not decided without the benefit of party debate.  The first issue, whether prospective notice is barred, has been addressed by a handful of non-Illinois courts.  The decisions, however, were not unanimous.  Compare 
Mackey v. Bristol West Insurance Services of California, Inc.
, 105 Cal. App. 4th 1247, 130 Cal. Rptr. 2d 536 (2003),
 and 
Pennsylvania National Mutual Casualty Insurance Co. v. Person
, 164 Ga. App. 488, 297 S.E.2d 80 (1982), with 
Munoz v. New Jersey Automobile Full Insurance Underwriting Ass'n
, 145 N.J. 377, 678 A.2d 1051 (1996).  (We note 
Mackey
 states two Illinois courts have found prospective notice barred.  See 
Mackey
, 105 Cal. App. 4th at 1259 n.8, 130 Cal. Rptr. 2d at 544 n.8.  These cases, however, did not address this specific issue.  See 
Fisher for use of Kiniry v. Associated Underwriters, Inc.
, 294 Ill. App. 315, 13 N.E.2d 809 (1938); 
Mitchell v. Burnett
, 1 Ill. App. 3d 24, 272 N.E.2d 393 (1971).  Instead, 
Fisher
 and 
Mitchell
 addressed the second issue raised by the dissent.)

In addition to the points argued in the above decisions, we note others may exist, including how prospective notice may benefit an insured by giving him or her more time to pay for requisite insurance.  In addition, there is no discussion of the consequences of a notice of cancellation that follows a missed premium.  By not allowing prospective notice, we might be placing the insured at a disadvantage by giving the insurer sole discretion to reinstate coverage at the end of the 10-day notice period. 

We doubt an interpretation of section 143.15 that allows prospective notice would permit insurers to give a cancellation notice in the policy itself.  The dissent’s approach ignores the case law requirement that a cancellation notice must provide sufficient information for the insured to determine whether the reason is valid and to allow him or her to contest the cancellation or correct the defect.  See 
Kujbida
, 260 Ill. App. 3d at 1008-09, 632 N.E.2d at 156.  A general cancellation notice in the policy would likely fail the requirements in 
Kujbida
. 

The second issue raises questions not debated in some time.  A few appellate court decisions have resolved the issue as the dissent suggests, finding similar notices conciliatory and equivocal.  See, 
e.g.
, 
Mitchell
, 1 Ill. App. 3d at 27-28, 272 N.E.2d at 396; 
Burnett v. Illinois Agricultural Mutual Insurance Co.
, 318 Ill. App. 629, 631-34, 48 N.E.2d 559, 560-61 (1943).  These cases can be traced or linked to 
Fisher
, 294 Ill. App. 3d 315, 13 N.E.2d 809, and the conclusion 
Fisher
 found a similar notice conciliatory and thus insufficient.  See 
Mitchell
, 1 Ill. App. 3d at 27, 272 N.E.2d at 396; 
Burnett
, 318 Ill. App. at 632-33, 48 N.E.2d at 560.  

In 
Roon v. Van Schouwen
, 406 Ill. 617, 621-22, 94 N.E.2d 880, 882 (1950) (
Roon I
), however, the Supreme Court of Illinois refused to apply 
Fisher
 in the same way.  The 
Roon I
 court adopted the appellate court dissent’s interpretation of 
Fisher
 (see 
Roon I
, 406 Ill. at 622, 94 N.E.2d at 882; see also 
Roon v. Van Schouwen
, 339 Ill. App. 173, 176-79, 89 N.E.2d 427, 429-30 (1949) (Niemeyer, J., dissenting) (
Roon II
)) and found the following notice sufficient:

"'We acknowledge receipt of the estimated advance premium due to renew the above policy.  You did not file a labor record as required in the policy and this policy cannot be continued unless you do furnish us with the information on the amount of labor you employed during the past six months.

***  

This policy will be canceled on Mar. 16,

 1945[,] unless you furnish us a report of the amount of labor employed by you during the past six months period.'"  
Roon I
, 406 Ill. at 623, 94 N.E.2d at 883 (Thompson, J., dissenting).

Roon I
 thus appears to permit cancellation notices that turn on action or inaction of the insured.  
Roon I
 may, however, be distinguishable.  
Roon I
 predates the current version of section 143.15.  
Roon I
 also does not involve cancellation for nonpayment of premium.  

Other questions arise, including the effect of the September 19 letter that gave Curtis actual notice of the cancellation almost one month before the accident.  That letter may itself be a cancellation notice.  That letter may be viewed as changing the allegedly conciliatory tone of the cancellation notice.  Perhaps the letter cures the issue of prospective notice.  These interesting assertions were not raised by anyone.  

This court would have benefitted from a full, or even partial, debate of these issues.  We decline the dissent's invitation to resolve issues not raised.

For the forgoing reasons, we affirm.

Affirmed.

MYERSCOUGH, P.J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the decision of the trial court.

On August 18, 1997, Anthem sent Curtis the following "Notice of Cancellation":

"Dear Insured,

As you know, you have a premium due 

08/31/97.  If you have already sent this pay-

ment to us, we thank you for your prompt 

attention.

If, however, you have not yet sent it 

to us. [
sic
]  Please remember that this 

payment is due in our office on 08/31/97.  

Having it here before that date will avoid 

cancellation of this policy.

If this payment is not received by us 

before 08/31/97, then this notice will serve 

as a notice of cancellation for non[]payment 

of premium effective 08/31/97, at 12:01 a.m. 

standard time." 

This August 18 notice purports to cancel the policy for a breach that may occur on August 31.  Anthem argues that the notice complies with section 143.15 because it was "mailed at least 10 days before the effective date of the cancellation."  215 ILCS 5/143.15 (West 1996).  The notice was also mailed before there was any breach, any nonpayment of premium.  The notice could have been sent the day the policy was issued.  

Perhaps Curtis was already in breach on August 18, when the notice was sent.  Perhaps Anthem could have declared the policy canceled for that breach, such cancellation to be effective sometime after August 28.  Anthem, however, chose not to do that.  Anthem's specific reason for the "notice of cancellation" was the premium due August 31.  Under the "notice of cancellation" there could be no breach until August 31.          Anthem then sent Curtis, on September 19, 1997, a collection notice for the premium due for the period through August 31, 1997.  The notice stated, "Recently your policy with our company was canceled.  Prior to that cancellation, there was a balance due for insurance protection you have already received.  The premium due is $106.81."  On October 17, 1997, Curtis was in an automobile accident, which resulted in damages to Ronald J. Yacko.  

This case presents two related issues:  (1) Can an insurer send a notice of cancellation before the reason for cancellation has occurred? and (2) Was the language in the August 18 "notice of cancellation" positive and unequivocal?  The issues are related because it is questionable whether a "notice of cancellation," sent before a breach has occurred, can be positive and unequivocal.     

An insurer is permitted to cancel an automobile insurance policy only by compliance with the applicable provisions of the Insurance Code.  
Bates v. Merrimack Mutual Fire Insurance Co.
, 238 Ill. App. 3d 1050, 1051, 605 N.E.2d 626, 627 (1992) (must also comply with policy terms).  An insurance company is held to a strict standard when it attempts to terminate a policy in midstream, to cancel a policy for the nonpayment of a premium.  
Textile Maintenance v. Industrial Comm'n
, 263 Ill. App. 3d 866, 871, 636 N.E.2d 748, 751-52 (1994); 
Conley v. Ratayzcak
, 92 Ill. App. 3d 29, 34-35, 414 N.E.2d 500, 504 (1980). 

After an automobile insurance policy has been in effect for 60 days, it may be cancelled only for the reasons specified in section 143.19 of the Insurance Code.  215 ILCS 5/143.19 (West 2000).  Most notices of cancellation must be mailed at least 30 days prior to the effective date of cancellation.  215 ILCS 5/143.15 (West 2000).  The insurer, however, may take advantage of a special rule where the cancellation is for nonpayment of premium.  "[W]here cancellation is for nonpayment of premium, the notice of cancellation must be mailed at least 10 days before the effective date of the cancellation."  215 ILCS 5/143.15 (West 2000).  Cancellation for nonpayment of premium, unlike other reasons for cancellation, cannot be appealed to the Director of Insurance.  215 ILCS 5/143.23 (West 2000).  "Nonpayment of premium" means "failure of the named insured to discharge, 
when
 
due
, any of his obligations in connection with the payment of premiums."  (Emphasis added.)  215 ILCS 5/143.13(e) (West 2000).  The is no suggestion in the statute that a nonpayment of premium can occur before the premium is due.    

Under the majority's analysis, insurers may ignore the statutory requirement that a notice of cancellation be sent.  Because there is no limit how early the notice can be sent, the policy can be its own notice.  The policy may simply contain a paragraph stating that if any premium payment is not timely received, the policy is terminated, effective 10 days thereafter.

Where a notice of cancellation is sent after a reason for cancellation has occurred, the insured is given some important information, not that something is possible but that it has happened.  In the present case, for example, assume that the insured sent in a premium payment on August 25.  Would the insured know on August 31 whether that payment had been received by the insurer?  Would he know whether his policy was in force?  The answer to both questions is "no."  In contrast, if the insured had received a notice of cancellation after the premium was due on August 31, he would have been given some definite information:  (1) his August 31 premium payment had not been received by the insurer; (2) his policy had been canceled; and (3) he had 10 days from the date of mailing to do something about it.    

"All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation."  215 ILCS 5/143.15 (West 1996).  The specificity provision requires that a notice of cancellation unambiguously provide sufficient infor-mation to enable the insured to determine whether the reason is valid, so that, if not valid, the insured can contest the cancellation and, if valid, the insured can correct the defect in order to obtain substitute insurance coverage.  
Kujbida
, 260 Ill. App. 3d at 1008-09, 632 N.E.2d at 156.  The requirement that a specific reason be given for cancellation supports the argument that a policy cannot be cancelled for nonpayment of premium until there has been a nonpayment of premium.  What was the specific reason for cancellation in this case?  No reason for cancellation existed at the time the "notice of cancellation" was sent.  It is difficult to be specific about the reason for cancellation when speculating about what might happen in the future.    

A notice of cancellation is sufficient so long as it positively and affirmatively indicates to the insured that it is the intention of the company that the policy shall cease to be binding upon the expiration of the stipulated number of days from the time when the intention is made known to the insured.  
Burnett
, 318 Ill. App. at 632, 48 N.E.2d at 560.  A cancellation notice that is equivocal, that is conciliatory in tone, that contains some contemplation of future action, is ineffective to cancel the policy.  
Mitchell
, 1 Ill. App. 3d at 28, 272 N.E.2d at 396; 
First National Bank of Pittsfield v. Country Mutual Insurance Co.
, 175 Ill. App. 3d 860, 867, 530 N.E.2d 521, 525 (1988) (the strict rules that apply to cancellation do not apply to nonrenewal).  The notice of cancellation in the present case did not positively and unequivocally inform the insured that the policy would terminate after August 31.  Quite to the contrary, the insurer was encouraging the insured to send the payment due on that date, and was hoping to continue the coverage.  The notice of cancellation was conditional:  "if this payment is not received by us before 08/31/97, then ***."

The majority suggests that the history of nonpayment of premiums, notices of cancellation, and continuation of the policy in force in this case warrants a hard-line position against the insured.  Actually, the law takes the opposite approach.  Where the insurer has continued coverage despite repeated nonpayments of premium and notices of cancellation, the insurer may thereby waive the right to argue that a supposed "notice of cancellation" terminated the policy.  See 
Cormican v. Anchor Casualty Co.
, 249 Minn. 196, 204, 81 N.W.2d 782, 788 (1957) ("generous credit" extended in the payment of premium for the prior year).  A waiver may be express or implied, arising from acts, words, conduct, or knowledge of the insurer.  It is unilateral, as no act of the insured is necessary to complete it.  Prejudicial reliance by the insured is not required.  
Brochu
, 105 Ill. 2d at 499, 475 N.E.2d at 878.  

The attitudes of insurance companies change after a loss has occurred.  Prior to that time, the insurer is interested in the premium, and the goal of the "notice of cancellation" may be simply to persuade the insured to pay the premium.  After a loss has occurred, the insurer is no longer interested in the premium.  After a loss has occurred, past equivocal statements, which did nothing more than demand payment and raise the possibility of cancellation, may be argued to have been definite expressions of termination.  See 
Conley
, 92 Ill. App. 3d at 34, 414 N.E.2d at 503 (purpose of notice requirement is to forestall a retroactive notice).  In the present case, did the insured, after August 31, believe that what he had to do was (1) pay his insurance premium or (2) find replacement coverage?  Given the strict rules for notices of cancellation, the insured here would have been justified in concluding that he had insurance, but he needed to get his premium paid.  

The remaining question is the effect of the September 19 collection notice.  The September 19 collection notice was clearly not a notice of cancellation.  Can it be argued that the two notices should be added together to equal one good notice?  Under that logic, the policy was in force until 10 days after the mailing of the September 19 collection notice, even though no such notification was given.  If those two notices were insufficient, could a third or perhaps a 
fourth piece of correspondence be taken into account?  Given the strict rules that apply to notices of cancellation, the answer should be "no."  The insured should be given a definite statement whether his policy is in force or not.  The existence of several pieces of correspondence that may be construed together to indicate the policy has been terminated do not equate with a positive unequivocal notice.  Requiring a positive unequivocal notice does not impose any great burden on the insurer.  

The question is not whether Curtis owed money for his premiums.  
Smith v. Richard
, 134 Ill. App. 3d 378, 383, 480 N.E.2d 859, 862 (1985) (mere failure to pay premiums does not terminate policy).  Anthem agreed to furnish coverage for a period of one year, expiring December 6, 1997.  Anthem was obligated to provide that coverage unless it gave notice of cancellation in strict compliance with the statute.  In the absence of such a notice, Anthem's remedy was to collect past-due premiums from its insured, not to deny coverage. 

The majority asserts that these issues were not raised by the parties.  The sufficiency of the August 18 notice was clearly an issue presented to us.  Curtis argued that the notice "must unambiguously provide sufficient information to enable the insured to determine whether the reason is valid," citing 
Kujbida
, which he misspelled.  Curtis specifically argued that Anthem's actions in continuing coverage despite repeated notices of cancellation constituted a waiver of any right to strictly interpret the August 18 notice.  This court is required to decide this case and establish the precedent of our court.  We should do the best job we can.  I reject the majority's suggestion that an inadequate presentation by the parties requires an inadequate decision by this court.