2021 IL App (1st) 200953-U

FIFTH DIVISION
September 3, 2021

No. 1-20-0953

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LAWRENCE S. KIRSCH, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15 L 10068 |
| | ) | |
| MNJ TECHNOLOGIES DIRECT, INC., an Illinois Corporation; PAUL KOZAK; and SUSAN KOZAK, | ) ) ) | |
| | ) | Honorable Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court properly granted defendants' motion for summary judgment. Plaintiff did not raise a genuine issue of material fact as to whether the parties ever formed a binding oral contract. Plaintiff also did not raise a genuine issue of material fact as to the existence of an unambiguous promise. The circuit court did not err in denying plaintiff's motion to reconsider. We affirm.

¶ 2    Plaintiff Lawrence S. Kirsch filed this lawsuit against his former employer MNJ Technologies Direct, Inc. ("MNJ"), MNJ's president and sole shareholder Susan Kozak, and

MNJ's Chief Operating Officer Paul Kozak (collectively, "the defendants".)[1] In his three-count complaint, Kirsch pleaded claims for breach of written contract, breach of oral contract, and promissory estoppel. After the court dismissed Kirsch's breach of written contract count, the parties filed cross-motions for summary judgment on the remaining counts. The circuit court granted the defendants' motion, and Kirsch now appeals that order. We affirm.

¶ 3                                  BACKGROUND

¶ 4      In his complaint, Kirsch alleged the following: In 2005, Paul orally offered to sell Kirsch a 30% stake in MNJ for $850,000. Kirsch accepted the offer. Paul then hired Kirsch to serve as Executive Vice President of MNJ. Kirsch paid $100,000 toward the purchase price in 2008. Kirsch presented a draft written option contract in 2014. In January 2015, Kirsch met with Paul, Susan, MNJ's accountant, and Paul's personal physician. Susan signed the draft agreement and Kirsch "believed" that a signed contract existed. About a week later, MNJ terminated Kirsch's employment without cause. Since that time, the defendants have refused to honor the sale agreement.

¶ 5      Kirsch's complaint included three counts: (1) breach of written contract, (2) breach of oral contract, and (3) promissory estoppel. The circuit court granted the defendants' motion to dismiss count I (breach of written contract.) The defendants then answered the complaint, filed several affirmative defenses, and filed two counterclaims. In their first counterclaim, they alleged that Kirsch breached a separate oral contract related to a $250,000 personal loan. In their second counterclaim, they alleged that Kirsch breached his fiduciary duty to MNJ by spending work time on a separate business venture.

_____

[1]Susan and Paul Kozak are wife and husband. Because they share the same last name, we refer to them by their first names.

¶ 6    After engaging in discovery, the parties filed cross-motions for partial summary judgment. In their motion, the defendants attacked Kirsch's complaint on the grounds that Kirsch failed to produce evidence of either an enforceable oral contract or an enforceable promise. The defendants also argued that the alleged oral contract violated the statute of frauds.

¶ 7    In support of their motion, the defendants attached affidavits, draft agreements, and the transcripts of deposition testimony with related exhibits. Among the evidence relied upon by the defendants was Kirsch's own deposition testimony that he did not pay the full purchase price before MNJ terminated his employment. Kirsch also admitted that certain terms—such as the timing of payment and whether Kirsch could maintain an ownership interest if he ever left the company—were not part of the original agreement and continued to be negotiated long after the alleged contract formation.

¶ 8    The defendants also produced deposition testimony and documents showing that the parties continued to negotiate the details of the sale for some nine years after the alleged formation of the oral agreement. Those documents included a draft written agreement transmitted by Kirsch on August 2, 2005. In that draft, the proposed purchase price was $800,000, rather than the $850,000 figure allegedly agreed to earlier. The $800,000 was to be paid in five annual installments of $160,000. The defendants also presented copies of tax documents and deposition testimony from one of MNJ's accountants to show that the $100,000 paid by Kirsch was not performance on the sale agreement but was part of a scheme to inflate Kirsch's income when applying for a bank loan. Finally, the defendants pointed to deposition testimony that Susan's approval, as sole shareholder, would have been required for any sale and testimony that she never gave such approval.

¶ 9    This evidence, the defendants argued, established (1) that there was never a "meeting of the minds" as to the essential terms of the purported sale contract and (2) that Kirsch did not perform his obligation—paying the full $850,000—under the alleged contract. The defendants contended that no genuine issue of material fact remained as to these issues, and that, therefore, they were entitled to judgment as a matter of law.

¶ 10    As to the count for promissory estoppel, the defendants argued that the alleged promise—to sell 30% of MNJ to Kirsch—was conditional in nature, and therefore unable to support a claim for promissory estoppel. Moreover, the defendants argued that the same evidence that showed there was never a meeting of the minds in the oral contract count showed that there was never an unambiguous promise on which Kirsch could have reasonably relied. Consequently, the defendants claimed, they were entitled to judgment on that count as well.

¶ 11    The circuit court entered summary judgment in the defendants' favor on both remaining counts of the complaint. The court found that there was no genuine issue of material fact as to the existence of an oral contract. The court held that the evidence showed conclusively that the parties never reached a meeting of the minds as to the essential terms of the alleged contract. In particular, the court found that the August 2005 draft, which included a sale price $50,000 lower than the alleged original offer, served as a counteroffer. Because a counteroffer amounts to a rejection of the original offer, the circuit court held that the alleged oral contract had never been formed. Evidence of subsequent negotiations and draft agreements further supported the court's conclusion that the parties never reached a meeting of the minds.

¶ 12    Moreover, the circuit court held that Kirsch's alleged performance was insufficient to support his cause of action. At most, the evidence showed that Kirsch paid $100,000 toward the purchase of a stake in MNJ. No evidence before the circuit court evinced any effort by Kirsch to

4

tender the full purchase price until nine years after the alleged formation of the contract and one week after Kirsch was fired from MNJ. The court noted that Kirsch presented no evidence that the defendants prevented Kirsch from performing his alleged obligation. Relying on Kirsch's own testimony that the parties had agreed that he could not remain a stakeholder if and when his employment with MNJ came to an end, the court held that even if Kirsch did have a valid option to purchase a stake in MNJ, that option must have expired before he tendered his full performance.

¶ 13     As to the count for promissory estoppel, the circuit court found that there was no unambiguous promise by the defendants. The court held the parties' negotiations, "and in fact the need to memorialize the agreement at all, [made] apparent that there was never an 'unambiguous' promise on which Kirsch could reasonably rely."

¶ 14     The circuit court also entered judgment in Kirsch's favor on one of the two counterclaims. The defendants then voluntarily dismissed the remaining counterclaim. Kirsch filed a motion for reconsideration of the summary judgment order, which the circuit court denied. This appeal follows.

¶ 15                                    ANALYSIS

¶ 16     This court has an independent duty to consider its jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). In his jurisdictional statement, Kirsch proposes that this court has jurisdiction to review the summary judgment order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Presumably, he invokes this rule because the order he is appealing granted final judgment as to some, but not all the remaining claims in the case. See *id.* (prescribing the conditions under which "an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims" in a single action). However, Kirsch filed his notice

5

of appeal after the circuit court granted the defendants' motion to voluntarily dismiss the final counterclaim. At that point, there were no longer any pending claims. Therefore, Rule 304(a) is inapplicable; our jurisdiction derives from Illinois Supreme Court Rule 303 (eff. July 1, 2017), governing appeals from final judgments.

¶ 17    On appeal, Kirsch contends that the defendants were not entitled to summary judgment on either count II (oral contract) or count III (promissory estoppel) of his complaint. He argues that he raised genuine issues of material fact as to the existence of an oral contract, his partial performance on that contract, and the existence of an unambiguous promise. The primary thrust of Kirsch's brief is that the circuit court did not apply the proper standard when ruling on the defendants' motion for summary judgment. He contends that rather than construing the evidence strictly against the defendants, the court disregarded his well-pleaded facts and deferred to the defendants' interpretation of the evidence. We review the circuit court's decision on a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 18    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). Summary judgment should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32. Although we must view all the evidence in the light most favorable to Kirsch, we need not ignore evidence or inferences that are unfavorable to him. *Yacko v. Curtis*, 339 Ill. App. 3d 299, 302

(2003). Moreover, "summary judgment requires the responding party to come forward with the evidence that it has—it is the put up or shut up moment in a lawsuit." (Internal quotation marks omitted.) *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14. "The opposing party may not stand on his or her pleadings in order to create a genuine issue of material fact." *Id.* ¶ 49 (citing *Fitzpatrick v. Human Rights Commission*, 267 Ill. App. 3d 386, 391 (1994)).

¶ 19    The essential elements of a breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resultant injury to the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. A defendant is entitled to summary judgment if the plaintiff fails to raise a genuine issue of material fact as to any of these elements. *Williams*, 228 Ill. 2d at 417.

¶ 20    The circuit court found, and we agree, that Kirsch failed to raise a genuine issue of material fact as to the existence of a valid and enforceable oral contract. The defendants presented uncontradicted evidence that there was never a finalized agreement. That evidence included the sworn testimony of Paul, Susan, and MNJ's accountants. The evidence also included multiple draft agreements written by or on behalf of Kirsch. Of particular importance is the fact that Kirsch's 2005 draft contract included a proposed sale price of $800,000, some $50,000 lower than the alleged offer. This evidence shows that the parties had not, by the time of the alleged oral contract formation, reached an agreement as to the material terms of the sale. See *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1036 (1993) (identifying price as a material term of a contract). If a contract is missing a material term, no enforceable contract is created. *A.S. & W. Club of Waukegan, Illinois v. Drobnick*, 26 Ill. 2d 521, 525 (1962).

¶ 21    Kirsch argues that the $800,000 figure was merely a "clerical" or "typographical" error. Because the circuit court was required to construe the evidence strictly against the defendants

(see *Outboard Marine Corp.*, 154 Ill. 2d at 131-32), Kirsch argues that the court should have credited his "typographical error" explanation and found that there was a genuine issue of material fact as to the formation of an oral contract. He also argues that he pleaded in his—unverified—complaint that the material terms of the sale agreement remained consistent from the time of the first offer.

¶ 22    The defendants argue credibly that the $800,000 figure could not have been a mere typographical error because the proposed schedule of payments also amounted to $800,000, rather than $850,000. More importantly, Kirsch presented no evidence in support of his "typographical error" theory. In the face of evidence that the parties never reached a meeting of the minds, Kirsch could not simply rest on his allegations to establish a genuine issue of material fact. See *Fitzpatrick*, 267 Ill. App. 3d at 391 ("If the party supplies sworn facts which warrant judgment in its favor as a matter of law, the opponent *** may not rest on her pleadings to create a genuine issue of fact."). The only evidence before the circuit court showed that the parties continued to negotiate, even as to essential terms, after the alleged formation of the contract. The circuit court did not err, therefore, in concluding that there existed no genuine issue of material fact as to the existence of a valid and enforceable contract. Without a valid and enforceable contract, the defendants were entitled to judgment as a matter of law. *Coghlan*, 2013 IL App (1st) 120891, ¶ 27 (existence of contract is essential to claim for breach of contract).

¶ 23    Kirsch also argues that he established a genuine issue of material fact as to whether he met his burden to show that he performed on the alleged contract. He contends that the $100,000 payment to MNJ in 2008 was adequate evidence of partial performance to meet his burden. He argues that the $100,000 was a payment toward the purchase of a stake in MNJ. The defendants claim that it was an unrelated effort to change Kirsch's apparent income. This disputed fact

alone, Kirsch contends, is sufficient to preclude summary judgment. Further, Kirsch argues that there is a genuine issue of material fact as to whether the defendants prevented him from performing on the contract by, among other things, firing him before he could tender the full purchase price and then rejecting his post-firing tender.

¶ 24 We note, however, that both the import of the $100,000 check and the question of prevention go only to the element of Kirsch's performance. The circuit court found that that there was never a binding oral contract *and* that Kirsch did not meet his burden on the element of performance. Kirsch had the burden to plead and prove both the existence of a valid and enforceable contract and his own performance. *Coghlan*, 2013 IL App (1st) 120891, ¶ 27. The court's judgment, therefore, included two independent bases for granting summary judgment. See *Williams*, 228 Ill. 2d at 417 ("If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper."). Having affirmed on the ground that there was never an enforceable contract, we need not address whether a genuine issue of material fact existed as to whether Kirsch's performance was partial, prevented, or nonexistent. See *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006) ("this court may affirm a trial court's grant of summary judgment on any basis apparent in the record").

¶ 25 The circuit court also properly found that the defendants were entitled to judgment on Kirsch's claim for promissory estoppel. "To establish a claim based on promissory estoppel, plaintiff must allege and prove that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10 (1990).

¶ 26    Kirsch contends that he raised a genuine issue of material fact as to whether the defendants made an unambiguous promise that he would be able to purchase a 30% stake in MNJ for $850,000. The same flaws with the oral contract claim also plague this claim. The record evidence shows that the parties had not reached an agreement as to the terms of the proposed sale, even as to the price. Years of negotiations—including negotiations as to the proposed sale price—and multiple draft agreements with varying terms show that there was no unambiguous promise. See, *e.g.*, *Leekha v. Wentcher*, 224 Ill. App. 3d 342, 351-52 (1991). Without an unambiguous promise, Kirsch's claim for promissory estoppel must fail.

¶ 27    Finally, Kirsch argues that the circuit court erred in denying his motion to reconsider. Motions for reconsideration either bring to the court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's application of the law. *Evanston Insurance. Co. v. Riseborough*, 2014 IL 114271, ¶ 36. We review the circuit court's denial of a motion to reconsider under a *de novo* standard if the motion alleged error in the court's application of the law. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). Kirsch's motion to reconsider alleged that the court erred in its application of the law in granting summary judgment on his claims of oral contract and promissory estoppel. We have already affirmed the circuit court's application of the law in ruling on the defendants' summary judgment motion. For the same reasons, we affirm the circuit court's ruling on Kirsch's motion to reconsider.

¶ 28                                    CONCLUSION

¶ 29    The circuit court did not err in denying Kirsch's motion for reconsideration or granting summary judgment on his claims for breach of oral contract and promissory estoppel. Accordingly, we affirm the judgment of the circuit court.

¶ 30    Affirmed.

10